## THOMAS M. LANAHAN *vs.* JOHN HEAVER.

*Breach of Contract—Bonus—Damages—Profits.*

On the 16th of June, 1888, L. being the owner of twenty-seven unimproved groundrents in the City of Baltimore, entered into a contract with H. whereby the latter agreed to erect twenty-seven houses, of the dimensions and character designated, at his own cost and expense, upon the twenty-seven lots. L. bound himself to cause the leasehold estate, held by B., to be assigned to H. when the houses should be under roof, and further to pay to H., as a bonus upon each house, the sum of $800, in certain specified instalments as the work progressed. The work was commenced, and twenty-two houses were built, and the bonus due upon each was paid. On the 2nd of October, 1888, application was made to the Mayor and City Council of Baltimore to open and extend Barclay street through the five lots on which no houses had been built. On the 12th of the same month L. notified H. that as these lots would be needed by the city for a part of the bed of the street, he would not expect H. to construct the five houses originally intended to be built thereon, inasmuch as they would, if built, be torn down immediately after being erected. H., however, proceeded to grade these lots, and excavated the cellars, and partially built the foundation walls of the houses in the bed of the proposed street. Subsequently, H. being dissatisfied with the damages awarded him by the Commissioners for Opening Streets, for the condemnation of his interest in the said houses, appealed to the Baltimore City Court. Upon the trial of this appeal H. claimed and was allowed damages for all the work done and materials used by him upon the five houses in the bed of the street, and for the losses sustained by him upon sub-contracts with mechanics and material men for work to be done on, and materials to be furnished for, these houses, as well as for materials actually purchased by him, but not used; and these damages were paid to him by the city. Later H. sued L. to recover damages for the breach by the latter of the contract of the 16th of June, 1888. HELD :

1st.  That as the work was not done on the five houses, the plaintiff was not entitled to recover the bonus stipulated for under the contract.

2nd.  That having claimed damages from the city for losses on contracts with mechanics and material men, and having recov-

ered them in the street condemnation proceeding, and having been paid for them by the city, the plaintiff could not recover the same from the defendant.

3rd. That the plaintiff could not recover for the loss of profits expected to be derived from the sales of the completed buildings, in the absence of all evidence as to whether the five houses would ever have been sold, as to when they could have been sold, and as to what price they would have brought.

APPEAL from the Superior Court of Baltimore City.

The case is stated in the opinion of the Court.

*Exception.*—The plaintiff and defendant respectively offered nine prayers which the Court (RITCHIE, J.) rejected, and ruled as matter of law on the facts found, first, that the defendant committed a breach of the entire contract, as to the five houses in question, by his refusal to pay the first instalment due under the contract on three of them, and by his notice then given that he would not pay any future instalment on any of said five houses; and that he thereby legally prevented the plaintiff from performing the contract on his part; and, second, that the plaintiff is entitled to recover a sum equal in value to what would have been his direct and immediate profits, if any, on said five houses, had his contract as to them been performed, but that he is not entitled to recover on any other account. To the rejection of his prayers and to the rulings of the Court, the defendant excepted. The Court rendered a verdict for the plaintiff and entered judgment thereon. The defendant appealed.

The cause was argued before ROBINSON, C. J., BRYAN, PAGE, McSHERRY, BOYD and BRISCOE, J.

*Frank Gosnell,* and *John Prentiss Poe, Attorney General,* for the appellant.

*H. W. Fox,* and *John V. L. Findlay,* for the appellee.

Lanahan *vs.* Heaver.

McSHERRY, J., delivered the opinion of the Court.

This case is now before us for the third time. The prior appeals are reported in 74 *Md.*, 493, and 77 *Md.*, 605. The latter of these has no relation to the merits of the case, but the former has. A brief statement of the facts is necessary to present in concise form the questions which are now brought up for final decision.

It appears that on June 16th, 1888, the appellant, being the owner of twenty-seven unimproved groundrents situated on North avenue in the city of Baltimore, entered into a contract with the appellee, whereby the latter agreed to erect twenty-seven houses, of the dimensions and character designated, *at his own cost and expense,* upon these twenty-seven lots; that the appellant bound himself to cause the leasehold estate, then held by one Anthony S. Bonn, to be assigned to the appellee when the houses should be under roof, and further, to pay to the appellee as a bonus upon each house the sum of eight hundred dollars in certain specified instalments as the work progressed; that the work was commenced, and twenty-two houses were built, and the bonus due upon each was paid; that on October the second, 1888, application was made to the Mayor and City Council to open and extend Barclay street through the five westernmost lots of the twenty-seven, northwardly to First street, and that about the twelfth of the same month Mr. Lanahan notified Mr. Heaver that as these lots would be needed by the city for a part of the bed of the street, he would not expect the appellee to construct the five houses originally intended to be built thereon, inasmuch as they would, if built, be torn down immediately after being erected. Mr. Heaver, however, proceeded to grade these lots, and excavated the cellars, and partially built the foundation walls of the houses in the bed of the proposed street; but whether before or after the receipt of the notice

from Mr. Lanahan is disputed by the witnesses, though whether before or after is wholly immaterial so far as the pending appeal is concerned. It is certain that no part of the work on these houses had progressed far enough before the notice was given, to entitle the appellee to any bonus under the contract. When the first floors of joists had been laid in three of these five houses Mr. Heaver demanded from Mr. Lanahan the instalment of the bonus payable under the contract at that stage of the work, but the latter refused to pay because he had notified the appellee not to proceed with the work in consequence of the proposed extension of Barclay street. Mr. Heaver then ceased work on these five houses. Later on the damages occasioned to Mr. Heaver by the opening of the street were assessed by the Commissioners for Opening streets at sixteen hundred dollars, but, being dissatisfied with that award, he appealed therefrom to the Baltimore City Court, where the jury increased the amount to two thousand dollars. Upon the trial of the appeal from the Commissioners Mr. Heaver claimed and was allowed damages for all the work done and materials used by him upon the five houses in the bed of the street, and for the losses sustained by him upon sub-contracts with mechanics and material-men for work to be done on, and materials to be furnished for, those houses, as well as for materials actually purchased by him but not used; and these damages were paid to him by the city. Subsequently he sued Mr. Lanahan to recover damages for the breach by the latter of the contract of June the sixteenth, 1888; and upon the lower Court's ruling, on a demurrer to one of the pleas, the first appeal reported in 74 *Md.*, 493 was brought to this Court. In the declaration filed by Mr. Heaver the refusal of Mr. Lanahan to pay the bonus then claimed by the appellee to be due on three of these five houses, was the breach assigned and relied on, and it was averred that thereby the plaintiff was compelled to desist from the

Lanahan *vs.* Heaver.

further prosecution of the work. The declaration concluded with the averment that the plaintiff was injured, not only by the defendant's refusal " to pay the said bonus money," but also because the plaintiff on the faith of the agreement had entered into other contracts with mechanics and material-men, which he was not able to perform by reason of the default of the defendant, and that he had suffered " other losses and injuries " to his great damage and prejudice. The ruling of the Superior Court, on the former trial, upon the demurrer to the defendant's third plea resulted in a judgment for the defendant, and upon appeal by the plaintiff that judgment was reversed and the cause was remanded for a new trial. A new trial was ultimately had upon the same declaration, to which amended pleas were filed. The Court, upon the second trial, rejected all the prayers offered on both sides and granted two instructions of its own, and upon a finding in favor of the plaintiff entered judgment in his behalf against the defendant for seventeen hundred and fifty dollars damages; and from that judgment this appeal has been taken.

It will be observed that the damages claimed in the declaration are, first, the bonus money stipulated for under the contract; second, losses on subsidiary contracts with material-men and mechanics; and, third, " other losses and injuries." But in the former appeal in 74 *Md.*, *supra*, we distinctly held that *bonus* as such could not be recovered as the case then stood; and its status has not been changed in this particular. The notice by the appellant to the appellee early in October, 1888, not to build upon the five lots in question was not declared on as a breach of the contract, but if it had been treated as such, the appellee would not have been warranted in proceeding with the work and thus making the damages recoverable against the appellant heavier to the extent of the value of the work so done after the notice, than they would have

otherwise been.   " The plaintiff had no right, by obstinately persisting in the work, to make the penalty upon the defendant greater than it otherwise would have been. * * * To persist in accumulating a larger demand is not consistent with good faith towards the employer." *Heaver vs. Lanahan,* 74 *Md.,* 498.   As a consequence, the bonus earned by building in the bed of the street after the notice of October had been given was held not to be recoverable; and that not earned is equally not payable.

With reference to the losses on subsidiary contracts, it is only necessary to say that Mr. Heaver claimed these identical damages from the city, recovered them in the street condemnation proceeding, and was paid by the city for them.   Having been paid once, he cannot recover them now from Mr. Lanahan, and, as we understand the argument of his distinguished counsel, this element of damages is abandoned altogether.   And so with unused materials.

There remains, then, only the " other losses and injuries " averred generally, but not particularized in the declaration. These " other losses' and injuries " are confined to lost profits—that is to say, profits which the plaintiff might have realized had he been permitted to go on and complete the contract for the construction of the five houses in the bed of Barclay street.   There are cases in which recoveries of the profits that a plaintiff would have made, had he been permitted by the defendant to perform his undertaking, have been allowed.   And there are other cases in which such a recovery has been denied.  *Balto. & Ohio Railroad Co. vs. Brydon,* 65 *Md.,* 198;  *Abbott vs. Gatch,* 13 *Md.,* 314;  *Clagett vs. Easterday,* 42 *Md.,* 617;  *Central Trust Co. vs. Arctic Ice Machine Mf'g Co.,* 77 *Md.,* 202. These cases are not at all in conflict, for they belong to two separate groups or classes, the distinction between which is obvious and broad.   Dealing only with actions *ex contractu,* it may be said that wherever it is reasonably certain or apparent that profits would have been

realized had the contract been completed according to its terms, and the profits of the bargain are the only thing purchased or contracted for, and are the direct and immediate fruits of the contract, there, though the *amount* of the profits be open to dispute or controversy, still, such profits as the evidence shows would have resulted but for the breach of the contract by the defendant, are a legitimate element of damages; but whenever it is purely problematical whether any profits would have been realized at all, by reason of contingencies which might never happen, or where the profits have reference to dependent and collateral engagements entered into on the faith of the performance of the principal contract, there, without regard to any uncertainty as to mere *amounts*, probable profits cannot be recovered, because too speculative, indefinite, and remote.

Now, all of the twenty-seven houses were to be built by Heaver *for sale.* The direct and immediate fruits of the contract with Mr. Lanahan were to be, and were understood by both of them to be, the profits which Mr. Heaver would make out of the sales of the completed buildings. If, therefore, Mr. Lanahan's breach of the contract has resulted in depriving Mr. Heaver of any legitimate and legally ascertainable profits on the sale of the five houses which were to have been built in the bed of Barclay street, Mr. Lanahan is undoubtedly responsible. Under the second and third prayers presented by the appellant and rejected by the Superior Court, it becomes necessary to examine briefly the evidence upon the subject of the alleged loss of profits.

It appears, then, that the average cost of the twenty-two houses actually built was about $2,024, which sum included the eight hundred dollars of bonus money contributed by the appellant. It also appears that but nine of these completed houses have been disposed of, though they were all finished by July, 1889, the time limited in

the contract for their completion. Of these nine, four are held as security by one Saunders for advances made to Mr. Heaver, and five were sold. The prices at which the sales were made varied, amounting for the houses with one-story back-buildings to nineteen hundred dollars, and for those with two-story back-buildings to two thousand dollars. Thirteen of the houses remain unsold. Now, the prices for which those were sold that have been sold were in every instance less than the actual cost of the buildings; for, as stated, the average cost was at least $2,024, and no sale was made for more than two thousand dollars. There was, therefore, no profit realized upon these sales apart from or over and above the bonus actually paid by Mr. Lanahan. There is no evidence in the record of what the market value of such houses would have been, and beyond the *data* furnished by the actual sales of such as were sold, and an agreement with one Saunders, to which allusion will presently be made, there is nothing from which it can be inferred that Mr. Heaver ever would have realized any profits at all. But as the only profits shown, by actual sales of other houses, to have been made by him were the bonus money, can he recover that bonus or any part of it, not as bonus, but as profits? We said in 74 *Md.*, *supra*, and we repeat now, that as the work was not done on these five houses he is not entitled to, and cannot recover, the bonus. But if not entitled to recover it as bonus, upon what possible principle can he be awarded it merely because he calls it by the different name of profits? The *profits* he would have made by a sale of these houses would have been the sums received in excess of the cost represented by his and Lanahan's joint contributions; and for such profits the latter would be liable if sufficiently proved, but for nothing other than such excess, unless it be conceded that he is liable in some form for the bonus or a part of it. If you say the bonus cannot be recovered under the circumstances of this case, then

you say that Lanahan is not liable in this action for any part of the eight hundred dollars, agreed to be paid by him on each house; and if he be not so liable then, no matter by what name you call these eight hundred dollars, they cannot be recovered from him. As, then, we have already held that the bonus cannot be recovered it must be excluded as a part of the profits. Whilst in a general sense profits may mean the difference between the actual cost of each house to Heaver and the selling price of the same house, that difference would necessarily include the bonus, and there is no escape from the predicament that a verdict embracing such bonus if sustained would sanction a recovery under one name of precisely and identically the thing which under its real name has been decided not to be recoverable. This would be a mere paltering with words. Conceding that he cannot, upon settled legal principles, recover *bonus*, but can recover lost profits, the two things must be different and not identical; and if, in fact, the lost profits consist, and can consist according to the proof, of nothing but unearned bonus, then obviously there are no recoverable damages established, and there can, in consequence, be no verdict beyond one for nominal damages.

But aside from this, and conceding the applicability of the doctrine laid down in *Black vs. Woodrow and Richardson*, 39 *Md.*, 194, and cases of that type, where the plaintiff agreed to do designated work *for the defendant,* or *on his property,* and was not engaged in doing that work *for himself,* or upon property to become *his own,* as here; still, the profits claimed must be free from speculation and must be sufficiently certain to be capable of adequate proof. They must not depend on the chances of trade, but upon the market value and other facts which are susceptible of definite proof. *Griffin vs. Colver,* 16 *N. Y.*, 494; *Masterton vs. The Mayor, &c., of Brooklyn,* 7 *Hill*, 61. And the plaintiff must establish the *quantum*

of his loss by evidence from which the jury will be able to estimate the extent of his injury, excluding all such elements of injury as are incapable of being ascertained to a reasonable degree of certainity by the usual rules of evidence. *Wolcott, Johnson & Co. vs. Mount,* 36 *N. J. L.*, 271. To furnish a ground of recovery as damages, *profits must be proved. United States vs. Behan,* 110 *U. S.*, 344. Damages "may be so uncertain, contingent, and imaginary as to be incapable of adequate proof; and then they cannot be recovered, because they cannot be proved. But when it is certain that damages have been caused by a breach of contract, and the only uncertainty is as to their amount, there can rarely be good reason for refusing, on account of such uncertainty, any damages whatever for the breach." *Wakeman vs. Wheeler & Wilson Mf'g Co.*, 101 *N. Y.*, 209. "The rule that damages which are uncertain or contingent cannot be recovered, does not embrace an uncertainty as to the value of the benefit or gain to be derived from the performance of the contract, but an uncertainty or contingency as to whether such gain or benefit would be derived at all. It only applies to such damages as are not the certain result of the breach, and not to such; as are the certain results, but uncertain in amount." *Blagen vs. Thompson,* 18 *L. R. A.*, 320, *and the copious and valuable notes to that case.*

Now, what proof is there on this subject in the record? Of the twenty-two houses actually built, but five have been sold, and four are held to secure advances, leaving thirteen unsold. Whether the five which were never built would have been sold had they been erected, within what time they would have been sold, and what prices they would have brought if sold, are questions to which nothing in the record furnishes an answer. That there was no demand for them seems to be reasonably certain from the fact that thirteen of those actually built remain unsold, and there is nothing to suggest that there existed any rea-

son why these five in the bed of Barclay street would have sold any more readily than either of the thirteen yet undisposed of. Had they been constructed and built, there are no *data* from which, with any approximation to certainty, the *time* of their sale can be estimated; and if their sale had been deferred for a few years the accumulation of amounts paid in ground rents, taxes, and interest charges on money borrowed beyond the bonus for their erection, and other outlays might, and probably would, have consumed every cent of profits which Heaver expected to realize on them. Then again, there is not a particle of evidence to show, and from the very nature of things there could not possibly have been any reliable evidence adduced to show, the price at which either of these five houses, had they been built, would have sold, assuming that they would have been sold at all; and there was no attempt made to estimate their probable market value. Without some such evidence it is simply impossible to form any judgment as to whether there would or would not have been profits arising out of the undertaking. In the absence of all evidence as to whether these five houses would ever have been sold; as to when they would have been sold, and as to what price they would have brought, any estimate of profits must necessarily be conjectural and speculative to the utmost degree; not because of the uncertainty as to the *amount* of the profits, but because of the very obvious uncertainty as to whether there would have been any profits at all. It is the latter uncertainty or contingency which precludes a recovery of profits alleged to have been lost.

There was some evidence of a transaction between Heaver and Saunders with reference to four of the five unbuilt houses, but we agree with the learned Judge below, who bestowed much thought upon the case, that this was not a sale or an agreement to sell these particular houses when built, " but simply an agreement by Saunders

to make advances, and by the plaintiff to convey said houses as security for the loan." This transaction, therefore, furnishes no standard of the market value of the houses had they been built.

From the views we have expressed, it follows that the second and third prayers of the appellant ought to have been granted. Those prayers asked instructions to the effect that there was no evidence legally sufficient to warrant a recovery of anything but nominal damages. The judgment must therefore be reversed, and as only nominal damages could be recovered, a new trial will not be awarded. *Crabbs vs. Koontz*, 69 *Md.*, 64.

> *Judgment reversed, with costs above and below, without awarding a new trial.*

(Decided 20th June, 1894.)