## J. S. RAWLINGS, J. S. RAWLINGS, JR., C. T. MARSDEN AND J. M. FISHER, Co-partners Trading as Rawlings Implement Company *vs.* DUANE H. NASH, Incorporated.

*Contracts with selling agents: quantity of articles; limited as to time and territory; damages; profits; notice to trade of new agent.*

Where there is a contract between a manufacturer and a vendee that the former will furnish the latter, for the purpose of resale, so many articles, within a specified time, the vendee is entitled only to so many of the articles as are necessary for the reasonable needs of his trade during that time.    p. 397

Upon a suit by the vendor for the price of the goods actually delivered, the vendee may recoup the loss of profits that he has sustained because of the vendor's default in not furnishing him with sufficient of the articles to supply his actual

sales of unfilled orders, made or received within the time
specified. p. 398

But the loss must be shown by evidence which does not leave
the question open to speculation and conjecture. p. 398

Ordinary or general profit may be recovered as damages in
such a case when the suit is for interference with an entire and
established business which the plaintiff had the right to carry
on indefinitely, or which had been carried on for such a length
of time as to make possible the ascertainment of profits with
reasonable certainty. p. 401

A party to a contract who has been injured by its violation is
entitled to such appropriate damages as he is able to prove
with reasonable certainty; but he may not base his recovery
merely upon conjecture as to the fact and extent of his loss.

p. 399

Such profits can not be recovered merely for the violation of
a contract to furnish for a limited time and territory com-
modities which the plaintiff might have sold in course of gen-
eral and uninterrupted business as dealers in articles of that
general kind. p. 401

A contract by a manufacturer to furnish a commodity for a
limited time and territory to the vendee, to be resold by the
latter, is not violated by a notice from the manufacturer to
the dealer to the effect that the commodity will be sold after
the termination of that time by another party, the notice stat-
ing that for the balance of such time the commodity will be
sold in that territory only by the vendee in the then existing
contract. p. 402

*Decided February 2nd, 1912.*

Appeal from the Superior Court of Baltimore City
(ELLIOTT, J.).

The cause was argued before BOYD, C. J., BRISCOE,
PEARCE, BURKE, THOMAS, PATTISON, URNER and STOCK-
BRIDGE, JJ.

*Rignal W. Baldwin* and *William S. Bryan, Jr.* (with whom was *Richard M. Duvall* on the brief), for the appellant.

*Henry P. Hynson, Jr.,* and *W. Calvin Chesnut* (with whom were *Gans & Haman* on the brief), for the appellee.

URNER, J., delivered the opinion of the Court.

The appellee corporation is engaged in the manufacture of harrows under a patent which it controls, and the appellant partnership deals in agricultural implements. These parties on August 1st, 1909, entered into an agreement in writing by which the company appointed the firm as its agents for the sale of the harrows in Maryland and certain other States for the period of one year commencing November 1st, 1909. The agreement contained an order from the firm purchasing absolutely fifteen hundred harrows at prices listed according to the sizes required, which were to be specified on or before October 15, 1910. The prices for extra coulters, or teeth, were also stated, but as to these there was no specific order in the contract. There were provisions, among others, to the effect that the goods specified in the agreement should be delivered between the dates indicated, unless deliveries were prevented by designated causes, and that it should be the duty of the firm and its sub-agents to make a judicious distribution of all printed matter furnished and take every opportunity to advertise the implements, by canvassing or otherwise, and to see that all harrows sold were properly set up and started. There was no option reserved to either of the parties for a renewal of the contract, and the appellee appointed another agency, to succeed the appellants, at the expiration of their term, for the exclusive sale of the harrows in the territory mentioned.

In pursuance of the agreement referred to the appellee company delivered to the appellants the fifteen hundred harrows as stipulated, and upwards of seventeen thousand coulters, but declined to sell them any in excess of those

quantities.   In the present suit by the company to recover
an unpaid balance due under the contract the principle.
question is whether, and to what extent, if at all, the defend-
ant firm is entitled to recoup the loss it claims to have suf-
fered in consequence of the plaintiffs' refusal to fill addi-
tional orders.

The defendants contend that under the terms of the con-
tract the plaintiff was bound to deliver all the harrows and
coulters ordered by them during the stated period, and they
insist that they have a right to recoup in damages the differ-
ence between the purchase and customary reselling prices
of the goods covered by the orders which the plaintiff
rejected.   The statement of account, upon which the defend-
ants rely, agrees with that of the plaintiff in showing an
indebtedness of $7,023.56 for implements and extra parts
furnished under the contract, but it claims $4,574.50 by way
of recoupment for profits on unfilled orders for eight hun-
dred and twenty harrows and about eleven thousand coulters.
The Court below accepted the defendants' theory to the
extent of holding that their right of purchase under the
agreement, during the prescribed period, was not restricted
to the quantity specifically mentioned, but, by its own in-
struction, it limited the recoupment to such damages, if any,
as the jury should find the defendants sustained by reason
of the failure of the plaintiff to furnish goods "*sold* by the
defendants and ordered by them from the plaintiff" during
the year of the contract, and which the latter failed or
refused to supply.   It was agreed at the trial that the amount
which it might be permissible for the defendants to recoup
on account of unfilled orders, under the Court's instruction,
was $161.50 (which, according to the evidence, was the
profit on about one hundred harrows sold in anticipation of
the orders being filled), and that this amount, deducted
from the bill rendered by the plaintiff, would leave a balance
of $6,862.16 for which the jury would be warranted in giv-
ing a verdict for the plaintiff, with interest in their discre-

tion; the right being reserved to the parties to have reviewed in this Court the questions involved in the rulings of the Court below. The verdict was for the precise amount stated, and the defendants have thus been awarded by way of recoupment all the damages they claim on account of the rejected orders in so far as they would have supplied sales actually effected. In view of the successful assertion of their claim to this extent the only question we need consider in this connection is whether their contention as to recoupment for damages on account of *prospective* sales should be sustained.

There is nothing in the agreement between the parties which, in our opinion, can be properly construed to mean that the defendants had an option for the purchase of as many of the implements as they might choose to order within the year of the contract. If this had been the understanding of the parties, they would doubtless have employed the very simple terms which would have readily and clearly expressed that intention. As the contract does not contain such a provision, and as the agency which it creates, and upon which the defendants rely, is *for the resale of the harrows within the prescribed time and area*, it is clear that the duty of the plaintiff to sell the implements to the defendants could not be held to extend further than the restricted purposes of such resales required. The defendants, therefore, were not entitled to purchase from the plaintiff beyond the reasonable needs of their trade existing during the time they were authorized by the agreement to deal in the plaintiff's patented commodity.

If the plaintiff violated the contract by refusing to sell to the defendants a sufficient number of the implements to satisfy the requirements of the business in the localities and for the period specified, the defendants would have an undoubted right to recover for such resulting losses as could be proved with reasonable certainty. In cases like the present, where the contract relates to articles which can be procured only from the party charged with default, and where

the purchase is understood to be made for the purposes of resale, the rule is that the vendee is entitled to recover the profits he would have derived from reselling the goods if they had been delivered by the vendor according to the agreement. But this loss must be shown by evidence which does not leave the question open to speculation and conjecture. Note to *Guetzkow* v. *Andrews,* 52 L. R. A. 219, 223; 35 *Cyc.* 645; *Leggett Axle Co.* v. *Michigan Buggy Co.,* 106 Mich. 145; *Wakeman* v. *Wheeler & Wilson,* 101 N. Y. 209.

It is stated generally in *Lanahan* v. *Heaver,* 79 Md. 418, that "wherever it is reasonably certain or apparent that profits would have been realized had the contract been completed according to its terms, and the profits of the bargain are the only thing purchased or contracted for, and are the direct and immediate fruits of the contract, there, though the *amount* of the profits be open to dispute or controversy, still, such profits as the evidence shows would have resulted but for the breach of the contract by the defendant, are a legitimate element of damages; but whenever it is purely problematical whether any profits would have been realized at all, by reason of contingencies which might never happen, there, without regard to any uncertainty as to mere *amounts,* probable profits can not be recovered, because too speculative, indefinite and remote."

In the case now before us there is no doubt as to the parties having contracted with a view to the profits to be derived from a resale by the defendants of the implements which the plaintiff agreed to furnish. With respect to the fifteen hundred harrows for which the agreement specifically provides, and which were duly delivered, the obligation of the plaintiff has, of course, been fully discharged. To the extent also to which the defendants made sales in anticipation of additional implements being supplied, their claim of recoupment has been recognized by the instruction of the Court and the verdict of the jury. If they are to be accorded a larger measure of recovery, it can only be upon evidence showing with the due degree of certainty that they were

prevented from making further sales, within the limited period of the contract, by the plaintiff's refusal to sell them goods reasonably required for that purpose.

The record shows that the defendants had on hand at the expiration of their agency three hundred and twenty-two harrows, as against which they had reselling orders for only fifty-two; and there is nothing to indicate that their supply of coulters was not adequate for the year's business. In this situation, with a considerable part of the stock actually furnished the defendants remaining unsold at the end of the contract period, it would be obviously impracticable to determine with any degree of certainty that they were deprived of the benefit of prospective sales by the failure of the plaintiff to make additional deliveries. It is, of course, not suggested that the defendants were entitled to accumulate implements to be sold after the termination of their contractual relations with the plaintiff, and they would certainly not have been justified in withholding from sale the harrows they had on hand while insisting upon a further supply. If it be assumed that the plaintiff's refusal to fill the extra orders embarrassed the defendants to some extent in their efforts to increase their sales, yet the fact that they were left with so large a stock of the harrows at the end of the season makes it problematical, to say the least, whether they would have sold any in excess of that quantity even though the plaintiff had fully complied with their demands. It is apparent, therefore, that if the jury had been instructed, as the defendants proposed by their first and third prayers, to allow by way of recoupment the difference between the prices they were to pay for the harrows and coulters ordered and the prices at which they would have been resold, an award of damages to the defendants must have been altogether speculative. While a party to a contract who has been injured by its violation is entitled to such appropriate damages as he is able to prove with reasonable certainty, it would not be just to permit his recovery to be based merely upon conjecture as to the fact and extent of his loss. This

principle has been applied, under varying circumstances, in
*Western Union Tel. Co.* v. *Lehman,* 106 Md. 318; *Winslow
Elevator Co.* v. *Hoffman,* 107 Md. 640; *Central Trust Co.*
v. *Arctic Ice Machine Mfg. Co.,* 77 Md. 202; *Crabbs* v.
*Koontz,* 69 Md. 61; *Clagett* v. *Easterday,* 42 Md. 628;
*Abbott* v. *Gatch,* 13 Md. 314, as well as in *Lanahan* v.
*Heaver, Supra.*

The second prayer of the defendants proposed to permit
recoupment of the "profits which would have been received
with reasonable certainty by the defendants from acting as
the plaintiff's sales agents" during the contract period.   It
was intended by this prayer, as we understand, to present
the question, which was also raised upon a number of excep-
tions to the exclusion of evidence, as to whether profits
earned by the defendants from the sale of the plaintiff's pro-
ducts, under separate contracts for the two previous years,
could be considered for the purpose of estimating the loss
alleged to have been sustained under the contract in suit.
The contention was made that the refusal of the plaintiff to
furnish the additional implements ordered practically de-
stroyed this branch of the defendants' business for the latter
part of the contract year, and that in this aspect of the case
the defendants' damages could be measured by the profits
earned in the preceding periods.

There is a class of cases in which evidence of profits usu-
ally earned has been admitted as the basis of recovery for
the destruction or interruption of an established business.
It has been held by this Court that the loss of such profits is
a proper measure of damages in cases where, as the result
of alterations negligently made by a landlord, the store-
room of his tenant was rendered unfit for occupancy (*Evans*
v. *Murphy,* 87 Md. 503); where the stock in trade of a store
was wrongfully taken in execution (*Strasburger* v. *Barber,*
38 Md. 103); where by reason of improvements or excava-
tions negligently made on adjoining premises the plaintiff's
building was injured to such an extent as to stop tempor-
arily the business he was there conducting (*Shafer* v. *Wil-*

*son*. 44 Md. 268; *Brown* v. *Werner,* 40 Md. 21); where a physician resumed a practice which he had sold with its good-will to another (*Warfield* v. *Booth,* 33 Md. 63); and where the operation of a distillery was affected by the obstruction of a millrace upon which it was dependent (*Lawson* v. *Price,* 45 Md. 123). In each of these cases the suit was for interference with an entire and established business which the plaintiff had the right to carry on indefinitely and which had been conducted for such a length of time as to make possible the ascertainment of its profits with reasonable certainty. In the present case such conditions do not exist. The complaint here is simply of the violation of a contract to furnish for a limited time and territory commodities which the defendants might have re-sold in the course of their general and uninterrupted business as dealers in agricultural supplies. It appears, moreover, that in each of the two preceding years the defendant's purchases from the plaintiff were less than those of which they actually received the benefit under the agreement in controversy, and there is consequently no proper basis of comparison upon which to estimate the prospective profits here claimed. In our judgment this is not a case to which the principle invoked by the defendants is applicable.

The defendants' fourth prayer referred to a notice sent out by the plaintiff in July, 1910, informing the trade that after November first the John Dere Plow Company would sell the harrows manufactured by the plaintiff in the territory covered to that date by the defendants' contract. This prayer sought to instruct the jury in effect that if the defendants, during the period of the agreement, in good faith ordered harrows and coulters which they could have sold before the expiration of the agency except for the notice in question, and if the jury should find that the plaintiff refused to furnish the implements so ordered, then the defendants were entitled to recoup the difference between the prices they would have had to pay the plaintiff for the implements and the prices for which they would have been resold. The

primary theory of this prayer is that the notice to which it refers was a breach of the plaintiff's implied obligation to refrain from any interference with the defendants' agency during the time for which it was created. In support of this view it had been proposed in the course of the trial to ask one of the members of the defendant firm whether the notice sent out by the plaintiff affected the resales, but upon objection the question was disallowed. This ruling was doubtless based upon the conclusion, which we think clearly correct, that no breach of contractual duty could be imputed to the plaintiff merely because it informed the trade that at the date fixed for the termination of the defendants' agreement another dealer would sell the plaintiff's products. As the defendants' agency was not to continue after November first, and as the notice plainly indicated that the succeeding agents could not sell before that date, it is evident that this act of the plaintiff could not have prejudiced the defendants' interests. The prayer last referred to could therefore not be regarded as sound in principle, even if the record contained evidence to sustain its hypothesis. The only other instruction requested by the defendants was fully covered by that formulated by the Court in lieu of the prayers offered.

There were fifty-seven exceptions relating to the admissibility of evidence. The various questions they raise are answered generally by the views we have already expressed, and a particular consideration of them is obviated by our conclusion that the instruction to the jury, and the agreement as to the amount of profits recoverable, afforded the defendants the full measure of recoupment to which they were entitled under the special circumstances of this case.

*Judgment affirmed, with costs.*