**MacKENZIE LABORATORIES, Inc. v. LAWRENCE et al.**

Civil Action No. 3849.

United States District Court District of Maryland.

Oct. 29, 1948.

John G. Rouse, Jr., of Baltimore, Md., and Ledward & Hinkson and Wm. C. Hogg, Jr., all of Chester, Pa., for plaintiff.

E. Paul Mason, Jr., of Baltimore, Md., and Albert F. Adams, of Washington, D. C., for defendant.

CHESNUT, District Judge.

Findings of Fact, Conclusions of Law and Discussion

This claim presents claims for damages for alleged breach of contract relating to

the processing of a substitute for soap called "Softee". The jurisdiction of the court is based on diversity of citizenship, the plaintiff being a Pennsylvania corporation and the defendants are sued as a co-partnership. The plaintiff's claims embrace three separate items: (1) In the amount of $3,990.32 for processing work done on material of a particular kind; (2) a separate item of $13,364.86 for processing work on somewhat different material and (3) a claim for profits allegedly lost for breach of the original contract with respect to the processing of material of the first kind. The amount of lost profits so claimed, after admitted credits, is $33,457.57, or $44,447.-20, according to different calculations submitted by the plaintiff.

The contract sued on consists of a written order for work to be done, a copy of which is filed with the complaint; but the evidence in the case shows that the arrangement between the parties was largely oral. The first question in the case is whether the contract was between the parties to the suit or between the plaintiff and a corporation not sued, the Du-Rite Products Company, a Delaware corporation. It will be noted that the written portion of the contract, copy of which is attached to the complaint, is written on a printed purchase order form with the name "Du-Rite Chemical Company" partly printed and partly written on the blank at the top; but the signature to the order is "By D. R. Lawrence", and is, literally at least, not that of Du-Rite Chemical Company, the partnership. Douglas R. Lawrence was not only a member of the partnership but was also president of the Du-Rite Products Company, the corporation, and was also interested at the time in another corporation known as the "Du-Rite Detergents Company" all of which businesses were in part conducted at Brentwood, Maryland, near Washington, D.C. The plaintiff contends that the contract was made with the partnership and that the individual signature of D. R. Lawrence was the authorized signature of the partnership. But the defendants contend that the contract was in fact made by the plaintiff with the Du-Rite Products Company, the corporation; and they further contend that even if the part-nership is to be held bound on the original contract, there was later a novation both of parties and of subject matter which transferred the obligation, if any, to the corporation.

The first question to be determined is whether the original contract was made with the partnership or corporation. There is evidence in the case to support either contention. The principal witnesses were MacKenzie, the president of the plaintiff corporation, and D. R. Lawrence. Their evidence on this particular point is directly in conflict. The plaintiff's evidence is to the effect that prior to March 26, 1946, the date of the original order for work to be done by the plaintiff, it had had some prior business transactions with the Du-Rite Chemical Company, the partnership, and that when the large order dated March 26, 1946 was under negotiation and two days prior thereto, in a verbal conversation between MacKenzie and Lawrence, the former insisted that the order must be given by the Du-Rite Chemical Company because it had a satisfactory credit rating which would enable the plaintiff to obtain the necessary bank loan for equipment to perform the work to be done; while the Du-Rite Products Company, the corporation, at that time was without a credit rating because it had only very recently become active in the business, although it had been organized in 1944. Therefore, testified MacKenzie, he insisted that the word "Chemical" should be written at the top of the order blank between the words "Du-Rite" and "Company", when the order was signed by Lawrence. On the other hand Lawrence testified in substance that there was no such conversation between him and MacKenzie at the time of giving the order; that the prior negotiations for practical terms and conditions of the order had occurred between MacKenzie and Bernard Sussman, the vice-president of the Du-Rite Products Comany, the corporation, and that MacKenzie well knew that the business to be done with respect to the material known as "Softee", mentioned in the order, was to be entirely the business of the corporation and not in any way that of the partnership; that from the very inception of the work all bills therefor were in fact paid by the cor-

poration and all materials processed by the plaintiff were received and sold by the corporation; that it was a part of the verbal arrangement that the Du-Rite Products Company, the corporation, make an initial advance or loan of $10,000 to the plaintiff for which the plaintiff in his own handwriting drew up and delivered his note for that amount payable to the corporation, which was produced in evidence and still held by the corporation; and that the partly printed and partly written name "Du-Rite Chemical Company" at the top of the order resulted inadvertently. The two witnesses were of substantially similar age and business experience, and both equally interested in the outcome of the litigation. Intrinsically they seemed to be of equal credibility and the question of fact to be decided is a close one. However, I have reached the conclusion that the contention of the plaintiff in this respect must be adopted giving deciding weight to the physical appearance of the order blank itself and because the correspondence between the parties and the invoices for work done shortly after the giving of the order and until July 31, 1946, were addressed by the plaintiff to the Chemical Company, the partnership, although I am not disposed to fully credit the reasons given by the plaintiff for stressing the importance to it of having the Chemical Company as the contracting party.

But while I feel obliged to conclude that the weight of the evidence shows the original contract was made with the partnership, I find from the evidence as a whole that later and before the termination of the relations between the parties and the institution of this suit there was a novation with respect to both the subject matter of the material to be processed and the obligor on the contract whereby the corporation became substituted for the partnership as the contracting party. Without reviewing in detail all the evidence bearing on this point, it will be sufficient to point out the principal facts.

In the first place, it is important to understand the economic and business conditions and rapid developments relating to the subject matter of the contract. It will be remembered that during the war and un-

til toward the end of 1945 ordinary commercial soap was scarce and the demand therefor was much greater than the available supply on the market. This condition naturally occasioned the manufacture and sale of substitutes for soap; but it will also be remembered that many materials, including supplies suitable for soap substitutes, were also very scarce in supply and required the obtaining of priority orders therefor not available to all manufacturers. It thus resulted that the Du-Rite Products Company, although earlier formed with the intention of going into the business of manufacture and sale of soap substitutes, was not able to actively undertake the business until early in 1946 when supplies first became available to it. But as soon as it was in a position to manufacture the soap substitutes, it received orders therefor in large quantities practically without advertisement. To fill these orders it contracted with various processors including particularly the plaintiff, and the written order of March 26, 1946 with respect to quantities is illustrative of the very great demand for the product. This order called for the processing and shipping by the plaintiff of approximtely 1,000,000 pounds of "Softee" per month; and the order read "Process Mix and ship 10,000,000 lbs of Softee in accordance with formulas submitted by Milton Harris Associates. All materials involved to be supplied by us and finished product subject to spot check approval @ the rate of $1.50 per cwt".

So rapid was the expansion of the corporation's business that, although it had been originally capitalized at only $1,000, it had on hand and in bank $38,000 after advancing to the plaintiff $10,000 on March 26, 1946. And during the year 1946 the business expanded so rapidly in a really mushroom growth that during the year and prior to December the corporation had $500,000 of net assets, and it contracted for and began the erection of a new plant at a cost of about $375,000. However, another important change in economic conditions resulted in December when price control over genuine soap was removed and a very large apparently reserve supply in warehouses became available on the market. This in turn practically destroyed the

market for soap substitutes and at once caused financial disaster for the Du-Rite Products Company resulting in a few months and considerably before the institution of this suit in the insolvency and liquidation of the corporation. But in July and August 1946 the financial condition of the Products Company was very different. It was then, apparently at least, very prosperous and was much stronger financially than the partnership. Assuming that in March 1946 when the written order was given the plaintiff had good reason to prefer contracting with the partnership rather than the corporation, that reason no longer existed.

Beginning with August 1946, a material change was made in the billing of invoices from the plaintiff in that after July 31 all subsequent invoices were billed showing sales to Du-Rite Products Company and not to Du-Rite Chemical Company. It will be remembered that it was the contention of the defendant that the original agreement had really been made with the Products Company, although, as previously stated, the correspondence and invoices up to July 31, 1946, had been between the plaintiff and the Chemical Company. The evidence as a whole shows that the whole transactions were very loosely handled on both sides with respect to billing and bookkeeping; but it is undisputed that in fact the whole of the business was actually done by the Products Corporation. Apparently in July the Products Company requested the plaintiff to change the situation, in consequence of which the definite departure was made with respect to the billing. It was agreed by counsel on both sides that after July 31 all subsequent invoices were to be made out by the plaintiff to the Products Company. The plaintiff contends that was not inconsistent with the position that the Chemical Company remained the obligor because, as MacKenzie testified, it was only an internal arrangement for convenience between the Chemical Company and the Products Company. But I am unable to accept this contention of the plaintiff by reason of certain other significant evidence and exhibits in the case.

As the jurisdiction of the court is based on diverse citizenship the Maryland law as to novation is controlling. Novation is a well settled principle in Maryland law of contract and has been applied in numerous decisions of the Court of Appeals of Maryland. The occurrence of a novation is not to be presumed but must be satisfactorily shown by the party who asserts it. Where, as in the instant case, the novation consists in the substitution of one debtor for another, it is, of course, necessary to show the consent both of the creditor and of the substituted debtor as well as that of the original debtor. The effect of the novation is to discharge the original debtor and substitute the obligation of the new debtor. And this must have been in accordance with the intention of the parties. It is, however, not necessary to show an express consent of the parties as it may be implied and inferred from circumstantial evidence. The occurrence of the novation implies, of course, the existence of an originally valid contract and the continuation thereof with the substitution of the new obligor. District National Bank of Washington v. Mordecai, 133 Md. 419, 427, 105 A. 586; Baltimore Academy v. Schapiro, 169 Md. 332, 181 A. 731; County Trust Co. v. Stevenson, 170 Md. 550, 559, 185 A. 435; Chatterley v. Safe Deposit & Trust Co., 168 Md. 656, 178 A. 854. See also generally Holloway & Bro. v. White-Dunham Shoe Co., 7 Cir., 151 F. 216, 10 L.R.A.,N.S., 704; Martin v. Breckenridge, 4 Cir., 14 F.2d 260; Williston on Contracts, Rev.Ed. Vol. 6, § 1875; 46 C.J. p. 580; A.L.I. Restatement Contracts, § 428.

The only controversial question here with respect to novation is whether the evidence shows the consent of the plaintiff because the consent of the substituted debtor, the Du-Rite Products Company, is too clear for argument. While it is not a party to this case the evidence clearly shows that its president, who is also the holder of half of its stock, contends that the original contract was made with the corporation; and all the material involved in the contract was furnished to the plaintiff for processing by the corporation and all the processed material was sold, received and paid for and otherwise handled by the corporation. Furthermore, when, as will later appear, statements of the account were rendered to

the corporation and demand was made upon it by the plaintiff for payment, the corporation never denied or even suggested its non-liability as obligor, if any.

The significant evidence for the inference of the consent of the plaintiff to the novation is to be found in the following points of evidence. In the first place, after July 31, 1946, all invoices from the plaintiff expressly showed sales to the corporation. In the plaintiff's letter of November 8, 1946, written to Du-Rite Products Company, Inc., the plaintiff requested that Company to agree to an increase in price for processing "Softee" from 1½ cents a pound stated in the order to 2¢ a pound, on the ground that the original price had been based on an estimated larger output per day than was possible from the materials furnished to it. Thereupon the parties agreed upon a new price at the rate of 1¾¢ per pound. In the statement of the accounts between the parties as of January 30, 1947, prepared by the witness Heller, then acting as manager for the plaintiff, the Du-Rite (Products) Company was charged for the work previously performed in the total amount of $3359.23 (now claimed to be $3990.32), but with credits in favor of Du-Rite so that the final item was "balance due Du-Rite $7,041.08"; and in addition thereto there was a balance still due Du-Rite of $3185.54 on account of the $10,-000 advance initially made, and still further there was an unliquidated balance due Du-Rite for certain equipment furnished by it in the amount of $2350. And finally, after transactions between the parties had terminated, the plaintiff wrote to Douglas Lawrence, Du-Rite Products Company, Washington, D. C., demanding recognition of the amount then due on processing work on the original contract and work on new material (to be shortly mentioned) in the total amount of "around $17,000", and then agreeing to return "all your material". While the transactions between the parties were active and of almost daily occurrence for nearly a year, most of the communications between them, according to the evidence, were verbal by telephone or otherwise so that the evidence includes comparatively few written documents or letters. Nevertheless those referred to are, I think,

highly significant as indicating the mutual agreement of the parties that the plaintiff looked to the Du-Rite Products Company as its final debtor for the balance for all work done by the plaintiff.

There is also much significance in the evidence given by the witness Heller who, during 1946, was actively engaged as an employee of the Du-Rite Products Company and, beginning in January 1947 and for a year thereafter was a superior representative of the plaintiff, first as manager during a month's absence of Mr. MacKenzie, and later as vice-president of the plaintiff Company. The witness Heller was not personally familiar with the making of the original contract in March 1946 between the plaintiff and Lawrence; but from July to December 1946 he was constantly very active in the relations between the plaintiff and Du-Rite, and stated that during all that time there was no business done between the plaintiff and Du-Rite Chemical Company. And it is clear enough that he at least clearly understood the business relations were between the plaintiff and the corporation and not the partnership. When in January 1947 he became the managing officer for the plaintiff he undertook to straighten out the accounts between the parties after making a careful examination of the plaintiff's books to reconcile the somewhat conflicting bookkeeping of the Du-Rite Products Company. This resulted in the preparation of the statement of January 30, 1947 above mentioned which showed then a balance of $7041.08 owing from the plaintiff to Du-Rite irrespective of certain other credits to which Du-Rite was or might become entitled. In this statement it will be noted that Du-Rite was credited with the invoice value of raw material which it had previously supplied to the plaintiff for processing in the amount of $8957.84. This was a part of the material supplied by Du-Rite in accordance with the original order of March 26, 1946. It also appeared from the evidence that while this material originally belonged to Du-Rite, much of it had been used by the plaintiff for work done for others than Du-Rite.

The reason that, in preparing this statement, Heller credited Du-Rite with the value of this material was because during Jan-

uary 1947 Mr. MacKenzie had told Heller that it had been agreed this should be done; and the arrangement to so credit Du-Rite was a part of a new agreement made between the parties at the end of December or early in January after the changed economic conditions had destroyed the market for "Softee". This new agreement in effect created a novation between the parties with respect to the subject matter of the original contract. Under the latter the product had been prepared in powdered form but it was hoped that a change in the processing and a change in the packaging would create a market for the newly proposed product which would be in a "bead" form and result from a "spray-drying" process. The price to be paid the plaintiff for the new and changed product was to be at the rate of 17¢ per unit as against which, however, Du-Rite would be credited with 3¢ per unit until the value of the Du-Rite materials in the amount of $8957.84 and other credits should be amortized.

Pursuant to this new and substituted agreement the plaintiff processed the new product which, however, was done largely for it by a New Jersey contractor. During the first few months of 1947 very considerable quantities of the new product were made by the plaintiff and shipped to or upon the orders of Du-Rite Products Company on invoices showing the product was sold to it in amounts totalling $13,364.86, none of which were paid by Du-Rite which, among other things, contended that the product was unsatisfactory by reason of its highly dusty nature and therefore unmarketable. It is not necessary in this case to determine the merits of the controversy between the plaintiff and the Du-Rite Products Company regarding the qualities of this material because I find from the evidence that whatever question there may have been with regard to the original liability of the partnership on the original contract the work performed by the plaintiff with respect to this new and substituted material was the result of an agreement between the plaintiff and the Du-Rite corporation, to which the partnership was not a party or guarantor. The billing for the new product and the correspondence between the parties and the evidence of Heller is all significant in this respect. And it will have been noted that in the final letter of April 30, 1947 from MacKenzie to Lawrence (Du-Rite Products Company) the plaintiff had consolidated the balance of the amount claimed by it under its original contract with the Chemical Company with the balance claimed by the plaintiff under the new agreement made with the Products Company. That is to say, the aggregate of the two claims ($3990.32 and $13,364.86) is referred to by the plaintiff as "around $17,000" and the whole of that is by the letter demanded by the plaintiff from Lawrence (Du-Rite Products).

Thus the evidence considered as a whole leads to the conclusion that while originally the plaintiff contracted with the Chemical Company, the partnership, later it was agreed that the Products Company, the corporation, should be substituted; and still later it was agreed between the plaintiff and the Products Company that a new form of product should be made and paid for on a new and different basis. That the plaintiff in this suit has elected to proceed against the partnership is, I think, explained by the changes that have occurred in the financial fortunes of the Products Company. Originally its credit rating was not satisfactory to the plaintiff; but later its financial fortunes so greatly changed that the plaintiff was willing to accept it as the contractor; but still later, and after its financial fortunes had failed due to sharp and sudden changes in economic conditions, the plaintiff has elected to seek to revive its claim against the partnership as its debtor. But even so late as April 30, 1947, and after the plaintiff was aware of the change, we still find its president consolidating the claims for the original and the substituted product as one whole claim against Douglas Lawrence (Du-Rite Products Company).

There is still another obstacle to the plaintiff's recovery of any amount against the partnership. On the original contract the claim now made by the plaintiff is for balance of work done, $3990.32 plus $44,447.20, the net damages for lost profits. With respect to item of $3990.32 for work done, the statement of the claim made by the plaintiff's manager Heller as of Janu-

ary 30, 1947 showing substantial balance due Du-Rite, seems to be a complete answer not satisfactorily obviated by Mr. MacKenzie's attempt to repudiate the action taken by his manager Heller. The claim for unrealized profits is apparently based on the theory that the original order of March 26, 1946, 10,000,000 pounds of Softee was to be processed, but that there was furnished by Du-Rite only 2,845,400 pounds for processing. The plaintiff submitted two alternatives tabulations with respect to costs of processing and profits that would have been realized amounting on one basis to $50,082.-20 (profit of $.007 per pound calculated) with credits allowed for balance due on note and for machinery furnished amounting to $5,535, or balance of profits due $44,-447.20. The other computation is on the basis of estimated net profits of 54¢ per hundredweight for 7,154,600 pounds of material not processed amounting to $38,992.-57, with like credits of $5,535 and net claimed balance of profits of $33,457.57.

As to these claims for profits, I think it sufficient to say without extended discussion, that on the whole evidence the proof is not satisfactory to show that the estimated profits would have been realized with the reasonable certainty that is required for proof of damages as to unearned profits. Lanahan v. Heaver, 79 Md. 413, 418, 29 A. 1036; Rawlings v. Duane H. Nash, 117 Md. 393, 83 A. 646. The claim now made seems quite inconsistent with the plaintiff's statement in his letter of November 8 to Du-Rite Products Company asking them to increase the price for processing in which it was said that even that requested increased price from 1½¢ to 2¢ per pound (an increase of 33⅓%) did not admit of a normal margin of profit. In the second computation for profits made by the plaintiff, his average net profits from July to November 1946 was stated to be $.0054 per pound. This is not consistent with the claim now made especially when the new price agreed upon was not 2¢ a pound but 1¾¢ per pound. The only explanation offered by the plaintiff for this inconsistency is that in asking for an increased price he stated a larger amount than he expected to receive. And neither in the statement of January 30, 1947, or in the final demand for $17,000, did the plaintiff make any claim for lost profits for the breach of contract.

With respect to the plaintiff's present claim for balance of $13,364.86 for work done under the new contract for a different material, it is sufficient to say again that I find from the evidence that this new agreement was made not with the defendant partnership in this case, but with the Du-Rite Products Company. As it is not a party to this case the dismissal of the complaint will, of course, not be any adjudication of the rights of the plaintiff against that corporation.

The necessary conclusion of law is that judgment on the pleadings and evidence must be given for the defendant partnership. Counsel may submit the appropriate order in due course.