THOMAS E. KING *vs.* AMERICAN POWDER COMPANY.

Middlesex.    April 1, 1935. — April 29, 1935.

Present: RUGG, C.J., CROSBY, PIERCE, LUMMUS, & QUA, JJ.

*Contract*, Novation.

Where it appeared that, after the making of a contract between a corporation and one of its employees whereby it was required to make certain payments to him, its business and some of its assets were sold to another corporation; that later the second corporation sold its assets to a third corporation, which thereupon sold to a fourth corporation the property received from the second; that in each of the first two sales the purchaser assumed all the liabilities of the seller included in a list in which no reference was made to the contract with the employee or to any liability to him, and in the third sale the fourth corporation assumed the liabilities which the third had assumed; and that over a period of several years after the first sale the employee worked for the second, third and fourth corporations in turn, until he was discharged by the fourth, a finding was not warranted that his contract with the first corporation became binding on the fourth by novation: the facts did not warrant either an inference that the fourth corporation assumed such contractual obligation, even if it knew of that obligation and employed and paid the employee on the basis thereof, or an inference that he had agreed to discharge the first corporation from liability to him.

CONTRACT. Writ dated February 16, 1931.

The action was tried in the Superior Court before *Macleod*, J. Material evidence is stated in the opinion. At

the close of the evidence, it was stipulated by the parties, among other things, that certain questions should be submitted to the jury and that, if the jury found the plaintiff entitled to recover, the judge should assess damages on a certain basis and "enter a finding for the plaintiff" in the sum assessed. A "finding" was so "entered" in the sum of $18,491.90. The judge reported the action for determination by this court.

*J. M. Raymond,* for the defendant.

*C. C. Steadman,* for the plaintiff.

PIERCE, J. This is an action of contract which comes before this court on a report of the Superior Court of the defendant's exceptions.

On June 14, 1916, the plaintiff, while in the employ of The American Powder Mills, was severely burned "under such circumstances that there was liability on behalf of The American Powder Mills for the injury." While in the hospital he was interviewed by the president and the superintendent of The American Powder Mills, who at this time made an oral contract with him whereby, in substance, the plaintiff agreed not to sue said Mills on account of the injuries received, in consideration of the Mills' agreement to give him "six days' pay a week plus all expenses that may incur through this accident, for life whether you are able to work or not, and in case of your death if you don't come out of this we guarantee to take care of your family." The plaintiff testified as follows: After the talk with the president and the superintendent "I did not expect that I could sit still and not work the rest of my life. I expected as a result of that talk that I was to work when able at The American Powder Mills at all times when they had anything for me to do except when I had to be away for treatments on account of the injury. In other words, when they said they were going to give me six days' pay a week I understood that unless I had to go to the hospital or see a doctor on account of my hands or they were in such pain that I couldn't work I was going to perform the work which they had for me to do at the plant, as far as I was able."

The plaintiff thereafter worked for the Mills when he was able until 1926, when The American Powder Mills sold its business but not all its assets to the Cellulose Products, Inc., "subject to all existing liabilities of American Powder Mills" as listed in a schedule attached to the bill of sale, which list did not in terms refer to any liability to the plaintiff. It appears in the record that the purchasers were an entirely new group formed to purchase the properties of The American Powder Mills and turn them into a cellulose plant, although some of the powder business was continued. On March 31, 1928, the name of Cellulose Products, Inc., was changed to American Powder Company. On October 8, 1929, pursuant to an agreement dated August 14, 1929, the American Powder Company sold all its assets to American Cyanamid Company. This sale was to a new group, the American Cyanamid Company being a large company with chemical operations all over the country. The purchaser agreed to pay all debts of the American Powder Company disclosed in the agreement of August 14, 1929. This agreement scheduled "a true and correct statement of all existing contracts of [American] POWDER COMPANY and of all claims against [American] POWDER COMPANY other than those arising in the ordinary course of business," and contained a warranty as an inducement to the agreement that the American Powder Company "has no direct or indirect liabilities, acknowledgments or commitments and that there are pending no claims or demands direct or indirect against it which are not stated or reflected" in said schedule, with exceptions not here material. The scheduled liabilities disclosed no contract with or liability to the plaintiff, although the employment contract of another employee was listed among the contracts. Tort claims of others were listed and the names of the employees and widows of deceased employees who were being paid pensions were scheduled in a "List of voluntary pensions paid by AMERICAN POWDER COMPANY which may be discontinued at any time at the option of AMERICAN POWDER COMPANY." The plaintiff's name did not appear on this list. By bill of sale dated October 8, 1929,

the American Cyanamid Company conveyed all the property it had that day received from the American Powder Company (formerly Cellulose Products, Inc.) to the defendant American Powder Company, a different corporation from the one which had conveyed to American Cyanamid Company, and the defendant assumed only the liabilities of the old American Powder Company which the American Cyanamid Company had assumed (Exhibit 3). With one or two exceptions, all the officers and directors of the Cellulose Products, Inc., were different from the officers and directors of The American Powder Mills, and all but two of the officers and directors of the defendant American Powder Company were different from those of the Cellulose Products, Inc., and those of The American Powder Mills, although a group of the employees including the plaintiff were carried on from one company to the next without any general discharge of them. It was agreed in open court that there was never any breach of the alleged contract with The American Powder Mills by the plaintiff up to September 22, 1930, when he was discharged by the defendant. It was also admitted by the defendant that there was a breach of the contract by it, if it were bound by the contract of The American Powder Mills.

The plaintiff makes no claim of any express novation, but contends that the evidence would warrant the jury in finding a series of implied novations between the plaintiff and the companies, including the defendant, which succeeded The American Powder Mills. Applicable to the case at bar the requisites of these novations are (1) that there existed a valid obligation between the plaintiff and The American Powder Mills; (2) that the American Powder Company (the defendant) agreed to assume and perform that contractual obligation; and (3) that the plaintiff knew of the agreement, accepted the arrangement and intended to discharge and extinguish the old obligation to him of The American Powder Mills. *Caswell* v. *Fellows*, 110 Mass. 52. *Pope & Cottle Co.* v. *Wheelwright*, 240 Mass. 221, 225.

The bills of sale contain no direct evidence of an assump-

tion of the obligation of The American Powder Mills to the plaintiff, nor is there evidence in the record of an oral novation as that term is defined. However, an agreement of the defendant to assume that obligation to the plaintiff and the assent of the plaintiff may be manifested and inferred by conduct. *Trudeau* v. *Poutre*, 165 Mass. 81, 87. *Kirtley* v. *C. G. Galbo Co. Inc.* 244 Mass. 179, 183. Assuming the corporations in the successive series knew of the contract with the plaintiff and with that knowledge continued to employ him and to pay him on the basis of that contract, there is no evidence outside the bills of sale to warrant an inference that any one of the corporations agreed with The American Powder Mills to assume its contract with the plaintiff, much less that the plaintiff ever by his conduct agreed to discharge The American Powder Mills. The case should not have been submitted to the jury. It follows in accordance with the terms of the stipulation and the report that judgment should be entered for the defendant. And it is

*So ordered.*