SWIFT ET AL. *v.* ALLAN ET AL.

[No. 60, October Term, 1956.]

590

*Decided January 11, 1957.*

The cause was argued before COLLINS, HENDERSON, HAM-MOND and PRESCOTT, JJ., and MACGILL, J., Associate Judge of the Fifth Judicial Circuit, specially assigned.

*William W. Evans* for the appellants.

*Leo Bender* for the appellees.

HENDERSON, J., delivered the opinion of the Court.

This appeal is ˋfrom a judgment in the amount of $1,000 entered upon a jury's verdict in favor of the appellees in an action on the common counts filed June 17, 1955, to recover a balance due on a building contract. The appellants contend that the court erred in overruling their motion for directed verdict and motion for judgment *n. o. v.*

The appellees, trading as H. & H. Development Co., were the owners and developers of a· subdivision known as Allanwood, in which the appellants bought a lot known as 1720 Flint Hill Road. In February, 1952, the appellees agreed to erect a house for the appellants for a price of $15,656, according to specifications, on the lot purchased. The written contract called for a down payment of $500, and another payment of $2,500 when the first floor was in place, "to be made by the owners". Certain progress payments, totaling $10,000, including a final payment when the house was completed, were "to be made by the Bank of Silver Spring", and other payments by "the owners". It appears that these somewhat unusual provisions were included because the appellants had a

limited amount of money and Mr. Allan had agreed to arrange for financing by means of a $10,000 loan on a 20-year basis, and had negotiated a temporary loan in that amount with the Bank of Silver Spring.

There were various additions to and deletions from the work called for in the original contract as the work progressed. On December 10, 1952, the appellees presented to the appellants an adjusted statement of account, which showed a balance due of $1,566.47. This was arrived at by deducting payments and allowances totaling $14,808.90 from the contract price, plus extras amounting to $719.37. The appellants raised no question as to the correctness of the account stated. On the same date the Swifts, Mr. Allan and a representative of the lending agency, Frederick W. Berens, Inc., attended a meeting at which the adjusted statement was presented. The house was then substantially completed and the Swifts had moved in. It was admitted that this was the final settlement. At the meeting an "escrow agreement" was executed by Mr. Allan and the lending agency, and approved in writing by the Swifts.

This agreement recited that Berens had agreed to take a first deed of trust secured on the property executed by the Swifts; that the "property is not in a completely finished condition in that the following work remains to be completed: Seeding of the lot and paving of the street for which the estimated cost is $1,000.00". It further recited that "the builder has agreed to complete this work on or before six months from date hereof". It was then agreed "between the Lender and the Builder that the sum of $1,000.00 shall be held in escrow by Frederick W. Berens, Inc., pending completion of this work and acceptance of the street by County Authorities at which time the said escrow shall be released to the Builder." Mr. and Mrs. Swift testified, and Mr. Allan did not deny, that he told them they would not be responsible for the payment of the $1,000, they were "out of it so far as that was concerned".

Mr. Allan testified that "the financing arrangement with the Bank of Silver Spring was for a construction loan for a period of six months and their commitment approving that

loan was conditional on their being furnished with a commitment from someone who would agree to take up the construction loan at the end of six months and reimburse them for their loan". Accordingly, he had obtained a commitment from Berens in February, 1952, prior to the execution of the building contract.

It is conceded that the original contract made no reference to "paving of the street". There was an item in the specifications that called for grading of a driveway from the house to Flint Hill Road, and in the final account rendered there was an item for extra work of some $118 for surfacing this driveway with stone. Flint Hill Road in 1952 was a paper street in the subdivision, although it was laid out on the bed of an old farm road. Evidently the Bank of Silver Spring raised some question as to the adequacy of the road in connection with its proposed construction loan, for on February 29, 1952, Mr. Swift wrote the Bank that "it is not possible at this time to obtain a satisfactory letter from Montgomery County covering the completion of a new roadway over Flint Hill Road in the Allanwood Subdivision, and the maintenance of same, so I wish to offer the following arrangement. I request that you withhold from the proceeds of the $10,000.00 construction loan, the sum of $1,000.00 in escrow until such time as I can furnish you with a satisfactory letter from Montgomery County covering the completion of the new roadway over Flint Hill Road, Allanwood Subdivision and the maintenance of same."

At about the same time Mr. Swift and Mr. Allan joined three other lot owners in a petition to Montgomery County for the surfacing of Flint Hill Road for a distance of 2,400 feet between Norwood Pike and Tierra Drive, the cost to be met by a front foot assessment. According to Mr. Allan, he did not present the petition to the County because he could not obtain enough signatures to warrant it. In a letter to Mr. Swift from Berens dated January 10, 1955, it was stated that "We have been advised by Mr. Speer of the Montgomery County Engineer's office that there is no request for a street work permit on file, nor is there any record of a petition from the adjoining property owners to have a street in-

stalled at their expense on a front foot benefit basis." On April 22, 1955, Berens credited the $1,000 on the Swifts' loan, pursuant to its letter to Mr. Swift and Mr. Allan stating that it was doing so because "the street work has not been done", although "the agreement called for completion of this work on or before June 10, 1953."

In the meantime Mrs. Swift had paid the difference between the balance shown to be due on the adjusted account and the $1,000 in escrow. Mr. Allan accepted and cashed her check dated September 23, 1953, in the sum of $566.47 on which was written "For payment in full—1720 Flint Hill Road". Mr. Allan admitted that he was present when the check was drawn, and his only comment as to the notation was that "the thousand dollars difference would be the thousand dollars that we had coming from Berens in accordance with the escrow agreement". Mr. Swift testified he told Mr. Allan at that time "this clears everything up between us", and Mr. Allan did not reply, but took the check. Mr. Allan did not deny this, and he admits that he never paved the street. Nor has Flint Hill Road been paved, although he testified he had "seen some people doing some road repair work other than myself and other than the County".

The question presented, then, is whether the appellees can recover the $1,000 shown to be due them on the final settlement account under the original contract, despite the fact that they have not complied with the terms of the escrow agreement, and accepted Mrs. Swift's check in full payment. There is no dispute as to the basic facts.

The appellees contend that the "escrow agreement" is not a bar to recovery under the original contract, because (a) the appellants were not parties to the agreement although they approved it, (b) there is nothing in the escrow agreement to show that it was intended to be in substitution for the original contract, (c) the escrow agreement was never performed by the lender, and (d) there was no consideration for it. They further contend that the acceptance of the check did not work an accord and satisfaction, since there was no additional or new consideration for it. We do not reach the

last contention, for we think the escrow agreement bars recovery.

The fact that the appellants were not formally made parties to the agreement is not material. It is enough that they assented in writing to the conditional withholding of a sum they had obligated themselves to repay to the lender. It is true that there was no express language releasing them from their liability to pay to the appellees the whole balance due on the original contract, but an intention to substitute a new obligation for an existing one may be gathered from the statements and conduct of the parties under all the circumstances of a particular case, particularly where the new agreement contains a term inconsistent with the term of an earlier contract. See *Restatement, Contracts*, § 408; *Williston, Contracts.* (Rev. Ed.), sec. 1826; *Powder Company v. Campbell*, 156 Md. 346; *Freeman v. Stanbern Const. Co.*, 205 Md. 71, 78. The fact that the new agreement was conditional, and the condition not performed, would not revive the old claim, if the parties intended a substitution of the new claim for the old. Cf. *Eno Cotton Mills v. Mudge*, 139 Md. 302, 305. Whether the transaction be viewed as a substituted contract or a novation is unimportant. *Hudson v. Md. State Housing Co.*, 207 Md. 320, 326. Cf. *Moers v. Moers*, 128 N. E. 202 (N. Y.). As to the rules respecting novations see *MacKenzie Laboratories v. Lawrence*, 80 F. Supp. 710 (D. C., Md.) ; *Parish Mfg. Corporation v. Martin-Parry Corporation*, 131 A. 710 (Pa.) ; and *Lamb v. Allegheny County Institution District*, 69 A. 2d 117 (Pa.).

In *Williston, Contracts* (Rev. Ed.), sec. 1873, it is said: "Where the new agreement is conditional, it is possible that the parties agreed that on the happening of a condition there should be a novation, and that until and unless the condition happened, the original obligation should remain in force. It is equally possible, however, for them to agree upon the immediate substitution in satisfaction of the original obligation of a new conditional contract. In such a case, the original debt is none the less extinguished if the failure of the condition in the new agreement prevents liability thereon from ever arising." In 6 *Corbin, Contracts*, § 1293, it is said: "It

is frequently difficult to determine whether a new agreement is a substituted contract operating as an immediate discharge, or is an accord executory the performance of which it is agreed shall operate as a future discharge. * * * Where the new agreement is oral and the words used are in dispute, the question becomes one for a jury." See also *Restatement, Contracts,* §§ 427, 428. It is equally true that where the facts are not in dispute, the question becomes one of law for the court. *Morecraft v. Allen,* 75 A. 920, 922 (N. J.).

In the instant case the appellees clearly agreed in writing that $1,000 of the proposed loan should be held in escrow until they paved the street, a condition they have never met. It seems equally clear that the $1,000 in question was a part of the balance due them on the original contract. The terms of the escrow agreement seem to be wholly inconsistent with the claim that they reserved a right to recover on the original contract, without performance of the condition they accepted in the escrow agreement. Moreover, the Swifts testified, and Mr. Allan did not deny, that he told them, at the time the escrow agreement was executed, that they "were out of it", and, at the time he accepted Mrs. Swift's check "in full payment", that he was looking to the escrow for the balance. There is no dispute as to the words used, and their meaning is hardly open to question.

We think the escrow agreement was supported by sufficient consideration. It is true that there was no dispute as to the amount due under the original contract, so the settlement cannot be viewed as a compromise. But the builder knew that the lender was insisting upon the paving of the street as a condition to the taking over of the construction loan advanced by the Bank of Silver Spring. Perhaps he hoped that the County would take over the street and pave it, but nevertheless he undertook to do the work himself, at least to the extent of $1,000. If he had not agreed to the condition, he might have laid himself open to suit by the Bank of Silver Spring, with whom he had negotiated the construction loan, or possibly by the appellants. Moreover, if Berens refused to make the loan, there was little likelihood that he would ever be able to collect the balance due from the Swifts, partic-

ularly if the Bank of Silver Spring foreclosed its lien on the property. It may be noted also that the paving of the street would be of benefit not only to the Swifts, but to the whole development in which the Allans owned a number of unsold lots. We think the benefits, or potential benefits, moving to the builder were sufficient to support his promise to pave the street, even though he was not obligated to do so under the original contract with the Swifts. The new promise was of benefit to the lender, as well as to the appellants, for its performance would tend to improve the security for its loan. There is nothing in the record to show that the lender had bound itself to make the loan without the condition it imposed, *i. e.,* the builder's promise to pave the street. "Consideration may be given to the promisor or to some other person. It may be given by the promisee or by some other person." *Humbird v. Humbird,* 162 Md. 582, 586; *Restatement, Contracts,* § 75; 1 *Williston, Contracts* (Rev. Ed.), sec. 114.

, Since we find no evidence, or inferences from evidence, that would support a right to recover in this action, the judgment must be reversed, without a new trial.

*Judgment reversed, with costs.*