## DAHL ET AL. *v.* BRUNSWICK CORPORATION

[No. 108, September Term, 1975.]

*Decided April 14, 1976.*

472

The cause was argued before SINGLEY, SMITH, DIGGES, LEVINE, ELDRIDGE and ▌O'DONNELL, JJ., and J. HODGE SMITH, Administrative Judge of the District Court of Maryland for District 6, specially assigned.

*Edwin T. Steffy, Jr.,* with whom were *Hooper, Kiefer, Cornell & O'Ferrall* on the brief, for appellants.

*Henry M. Decker, Jr.,* with whom was *David K. Hayes* on the brief, for appellee.

DIGGES, J., delivered the opinion of the Court.

The plaintiffs-petitioners, 21 former employees of the Concorde Yacht Division of the defendant-respondent Brunswick Corporation, alleging that their employment was involuntarily terminated by the sale of the division to Test Corporation, brought this contract action to recover varying amounts of severance pay, accrued vacation pay and two weeks' pay in lieu of two weeks' prior notice of separation. Judge H. Kemp MacDaniel, sitting without a jury in the Circuit Court for Baltimore County, held that although these employees had had a contract with Brunswick providing for some such compensation, their subsequent acceptance of employment with a subsidiary of Test constituted a novation which abrogated their right to recover against Brunswick. On appeal, we conclude that the petitioners are entitled to severance pay and possibly pay in lieu of notice, but not vacation pay.[1]

The petitioners, while employed in the Concorde Yacht Division, located in Dundalk, Baltimore County, had neither written employment contracts nor a collective bargaining agreement. The employees, however, were included within the scope of written policy statements issued by Brunswick to govern various aspects of their employment; among the subjects covered by these directives were severance and vacation pay. Additionally, Brunswick had an unwritten general practice of providing its employees, in those cases in which they were entitled to severance pay, with two weeks' salary if they were not given two weeks' prior notice of termination. Even though some of the petitioners had not seen copies of Brunswick's directives, all of them were aware of the existence of the company's written and unwritten policies and practices.

Following extensive negotiations, Brunswick, on September 17, 1970, agreed to sell its Concorde Yacht Division to Test Corporation. Under the terms of the sales

---

1. Pursuant to Maryland Code (1974, 1975 Cum. Supp.), Courts and Judicial Proceedings Article, § 12-201, we granted certiorari before the case was heard in the Court of Special Appeals.

contract Test was to form a wholly-owned subsidiary corporation, to be known as Test Concorde, Inc., which was to take title to the division's assets and control of its operations on October 1, 1970; additionally, Test was required to continue Brunswick's policies with respect to severance and vacation pay. For its part, the respondent covenanted that it would "not recruit among the personnel of the Division, or in any manner induce any of the said personnel . . . to remain in the employ of Brunswick." The division's employees were first informed of the sale at a meeting held in mid-September, 1970, at which time they were told they could not remain with Brunswick but rather, effective October 1, they would be employed by Test Concorde in the same positions, at the same salaries and with the same or better benefits. All of the petitioners accepted jobs with Test Concorde on October 1, 1970, and continued to be employed by that corporation until April 27, 1972, when, due to insolvency, it closed its doors. Although Test Concorde did not provide the petitioners with literally all the fringe benefits they had previously enjoyed, it did pay these employees the same salaries and continued Brunswick's policies with respect to severance pay, vacation pay and two weeks' pay in lieu of prior notice of termination.

Having sketched the pertinent facts, we will now consider separately the categories of claims made by the petitioners, beginning with severance pay. The first question is whether Brunswick's severance pay policy statement became part of the employment contract between it and its employees. Brunswick concedes, as it should, that its policy directive with respect to severance pay constituted an offer of a unilateral contract of which the employees were aware and, by continuing to work for Brunswick, accepted. This Court, when faced with a policy statement regarding bonuses, ironically issued by this very same company, Brunswick Corporation, held, in *MacIntosh v. Brunswick*, 241 Md. 24, 30-31, 215 A. 2d 222 (1965), that the provision of the directive which imposed certain post-employment restraints on employees was unenforceable and that consequently the plaintiff-employee was contractually entitled to a bonus.

Moreover, the Court of Appeals of Michigan, in a case almost identical with the one before us, held that Brunswick's policy statement relating to severance pay had ripened into a contractual obligation of the company. *Clarke v. Brunswick Corp.*, 48 Mich. App. 667, 211 N.W.2d 101, 103 (1973), *leave to appeal denied*, 391 Mich. 765 (1974). Besides those two cases, there is abundant support for the proposition that employer policy directives regarding aspects of the employment relation become contractual obligations when, with knowledge of their existence, employees start or continue to work for the employer. *See, e.g., Chapin v. Fairchild Camera and Instrument Corp.*, 31 Cal. App. 3d 192, 107 Cal. Rptr. 111, 114-15 (1st Dist. 1973); *Mace v. Conde Nast Publications, Inc.*, 155 Conn. 680, 237 A. 2d 360, 361-62 (1967); *Willets v. Emhart Mfg. Co.*, 152 Conn. 487, 208 A. 2d 546, 547 (1965); *Cain v. Allen Electric & Equip. Co.*, 346 Mich. 568, 78 N.W.2d 296, 298-302 (1956); *Gaydos v. White Motor Corp.*, 54 Mich. App. 143, 220 N.W.2d 697, 700, *leave to appeal denied*, 392 Mich. 800 (1974); *Hinkeldey v. Cities Service Oil Co.*, 470 S.W.2d 494, 499-501 (Mo. 1971); *Anthony v. Jersey Central Power & Light Co.*, 51 N. J. Super. 139, 143 A. 2d 762, 764-66 (App. Div. 1958); *Roberts v. Mays Mills, Inc.*, 184 N.C. 406, 114 S. E. 530, 532-33 (1922); *Hercules Powder Co. v. Brookfield*, 189 Va. 531, 53 S.E.2d 804, 808-09 (1949); Annot., 40 A.L.R.2d 1044 (1955); *cf. Adams v. Jersey Central Power & Light Co.*, 21 N. J. 8, 120 A. 2d 737 (1956) (collective bargaining agreement); *Schofield v. Zion's Co-op Mercantile Institution*, 85 Utah 281, 39 P. 2d 342 (1934) (resolution of board of directors). Since it is therefore clear that Brunswick's severance pay policy directive became a contractual obligation, we must next determine whether the petitioners were entitled to severance pay under the policy statement's provisions.

In September of 1970 Corporate Procedure 1.3331 of Brunswick's Policies and Procedures Manual provided that severance pay would be granted to employees who were involuntarily terminated, defined as

> "any separation from the payroll for an indefinite period (more than 30 days) for actions not within

the direct control of the employee when no other suitable opening is available."

The petitioners first assert that they became "separat[ed] from the payroll for an indefinite period . . . for actions not within [their] direct control" when Brunswick sold its Concorde Yacht Division to Test and informed its employees that they could no longer work for Brunswick. *See Clarke v. Brunswick Corp., supra,* 211 N.W.2d at 103. Although there is a dearth of Maryland authority on point, there is ample support elsewhere for the position that when part or all of a company is sold and the employees are told that they cannot remain with their old employer, their employment has been terminated even though they immediately begin to work for the new owner. *See, e.g., Chapin v. Fairchild Camera and Instrument Corp., supra,* 107 Cal. Rptr. at 115; *Willets v. Emhart Mfg. Co., supra,* 208 A. 2d at 548; *Gaydos v. White Motor Corp., supra,* 220 N.W.2d at 700-02; *Clarke v. Brunswick Corp., supra,* 211 N.W.2d at 103; *Matthews v. Minnesota Tribune Co.,* 215 Minn. 369, 10 N.W.2d 230, 232 (1943); *Hinkeldey v. Cities Service Oil Co., supra; Adams v. Jersey Central Power & Light Co., supra,* 120 A. 2d at 740-41; *Anthony v. Jersey Central Power & Light Co., supra,* 143 A. 2d at 763-64. In fact, Brunswick concedes that the petitioners satisfied this first portion of the definition. However, the policy directive also required, in order for there to have been an involuntary termination, that "no other suitable opening [be] available." Whether that prerequisite was fulfilled by the petitioners, which depends on how the phrase should be read, is the first contested issue of this severance pay controversy. Although Brunswick's brief seems to suggest that the meaning of the language is clear, we, like the trial court, have no difficulty in accepting the employees' contention that the phrase "no other suitable opening is available" is ambiguous because it could be referring either to jobs within Brunswick alone, or to positions with Brunswick or any other employer. Under the former construction, which the petitioners assert is correct, terminated employees would not be entitled to severance pay if they were offered suitable jobs by Brunswick but

would receive severance pay if they left the respondent's employ, whether or not they were offered work elsewhere; under the latter interpretation, championed by Brunswick, employees would not have a right to severance pay if they were offered equivalent jobs by Brunswick or anyone else.

To support the construction it prefers, Brunswick relies on the fact that the policy statement requires both a "separation from the payroll" [2] and that there be "no other suitable opening ... available." As we understand its argument, Brunswick maintains that if the phrase "no other suitable opening is available" referred only to job openings with Brunswick, as the employees assert, then the phrase "separation from the payroll" would be superfluous because every time an employee qualified for severance pay under the former he would necessarily also qualify under the latter, and every time a worker failed to qualify under the former he would necessarily also fail to qualify under the latter. What Brunswick appears to be contending is that, under the petitioners' proposed construction, if an employee qualifies for severance pay because there was "no other suitable opening ... available" with Brunswick, he will no longer be in Brunswick's employ and therefore would necessarily have been separated from the payroll; and if a worker fails to qualify for severance pay because there was a suitable opening available with Brunswick, he would still be working for Brunswick and therefore he would necessarily not have been separated from the payroll.[3] Consequently, Brunswick says, the employees' suggested interpretation runs afoul of the rule of construction which states that a

> "contract must be construed in its entirety and, if reasonably possible, effect must be given to each clause [, phrase and word] so that a court will not find an interpretation which casts out or disregards a meaningful part of the language of the writing

---

**2.** The record establishes that there was only one payroll for all of Brunswick Corporation, including each of its divisions.

**3.** If there had been a "suitable opening ... available" with Brunswick and the employee had declined to accept it, his termination would be voluntary; no severance pay was provided for voluntary terminations.

unless no other course can be sensibly and reasonably followed." *Sagner v. Glenangus Farms,* 234 Md. 156, 167, 198 A. 2d 277 (1964); *see Hart v. Hart,* 165 Md. 77, 80, 166 A. 414 (1933); *Huber v. Mullan,* 246 F. Supp. 8, 11-12 (D. Md. 1964), *aff'd,* 350 F. 2d 872 (4th Cir. 1965) (per curiam).

We reject Brunswick's argument because, for one, it violates the very rule of construction it relies on by ignoring the word "suitable" in the phrase "no other suitable opening is available." It is quite possible that Brunswick could have "no other suitable opening . . . available" for a terminated employee, such that that prerequisite was fulfilled, yet the worker might, for any number of reasons, accept a nonsuitable [4] job with Brunswick and thus be barred from recovering severance pay because he would not be separated from the payroll. Consequently, Brunswick's assertion that the employees' construction of "other suitable opening" makes the requirement of being separated from the payroll superfluous is simply incorrect.

Having found Brunswick's contention wanting, we turn to the arguments in favor of the employees' construction. Initially, we think it likely that when Brunswick defined involuntary termination as "any separation from the payroll . . . *when* no other suitable opening is available" (emphasis added), it was, in an inarticulate manner, really saying "any separation from the payroll . . . [*as a result of there being*] no other suitable opening . . . available." If so, then since "payroll" obviously refers only to Brunswick's payroll, "no other suitable opening . . . available" only makes sense if it refers to jobs within Brunswick alone. Secondly, the employees argue that their reading of the language should be accepted because Brunswick drafted the policy statement and, as this Court has said many times, it is a basic rule of construction that contractual ambiguities will be construed against the party which authored the contract. *See, e.g., Canaras v. Lift Truck Services,* 272 Md. 337, 356-57, 322 A. 2d 866 (1974); *Kelley Constr. Co. v. Sanitary Comm.,* 247 Md.

---

**4.** A job could be "nonsuitable" because of the duties it entails, the amount it pays or for any number of other reasons.

241, 250, 230 A. 2d 672 (1967). Additionally, to read "other suitable opening" as referring to positions with any employer, as Brunswick suggests, would make the severance pay provision of this contract a form of unemployment insurance (money to be paid only if no one offers the employee another job), rather than, as would be the case under the employees' interpretation, a reward for past services. As the employees point out, it is the latter characterization of severance pay in employment contracts which has become generally accepted. *See, e.g., Chapin v. Fairchild Camera and Instrument Corp., supra.* 107 Cal. Rptr. at 115-16; *Mace v. Conde Nast Publications, Inc., supra,* 237 A. 2d at 361; *Willets v. Emhart Mfg. Co., supra,* 208 A. 2d at 548; *Gaydos v. White Motor Corp., supra,* 220 N.W.2d at 700; *Adams v. Jersey Central Power & Light Co., supra,* 120 A. 2d at 740-41; *cf. Cain v. Allen Electric & Equip. Co., supra,* 78 N.W.2d at 299-301; *Anthony v. Jersey Central Power & Light Co., supra,* 143 A. 2d at 764-66. Finally, the employees' position is supported by precedent directly on point. The Court of Appeals of Michigan, when faced with the exact same policy statement in *Clarke v. Brunswick Corp., supra,* 211 N.W.2d at 103, accepted the employees' construction, stating that:

> "The trial judge ... found that the term 'other suitable opening' meant an opening with [Brunswick] corporation. As the trial judge said, 'Clearly this language "suitable opening" was not referring to a vacancy in a comparable position with the Ford Motor Company, Whirlpool Corporation, American Seating Company, or any other employer than Brunswick Corporation.' We agree."

We find the support for the employees' position persuasive, and accordingly hold that "other suitable opening" refers only to other suitable jobs with Brunswick. Since Brunswick's contract with Test prevented the employees of the Concorde Yacht Division from being retained by the respondent, there were no openings available with

Brunswick for the petitioners; thus, this last prerequisite to being involuntarily terminated was also satisfied. We conclude, as did the trial court, that the employees were involuntarily terminated within the meaning of the policy statement and therefore were entitled to severance pay under their contract with Brunswick unless otherwise legally barred from recovery.

The trial court, although initially concluding that the employees were entitled to severance pay, nevertheless held that these petitioners were barred from recovery because, when they accepted jobs with Test Concorde, they entered into a novation which released Brunswick from its responsibility to compensate them. This State's general rules of law with respect to novations are well-settled and are in accord with the prevailing views elsewhere in the nation. As Judge O'Donnell said for the Court in *I. W. Berman Prop. v. Porter Bros.*, 276 Md. 1, 7-8, 344 A. 2d 65 (1975), our most recent decision discussing novations:

> "A 'novation' is a new contractual relation made with intent to extinguish a contract already in existence. It 'contains four essential requisites: (1) a previous valid obligation; (2) the agreement of all the parties to the new contract; (3) the validity of such new contract, and (4) the extinguishment of the old contract, by the substitution of the new one.' *BarGale Industries, Inc. v. Robert Realty Co., Inc.*, 275 Md. 638, 646, 343 A. 2d 529, 535 [(1975)]; *Leisner v. Finnerty*, 252 Md. 558, 250 A. 2d 641 (1969); *Hudson v. Md. State Housing Co.*, 207 Md. 320, 114 A. 2d 421 (1955); *Baltimore Academy of the Visitation v. Schapiro*, 169 Md. 332, 181 A. 731 (1935). *See also* 6 A. Corbin, *Contracts* § 1297, et seq. (1962).

> \* \* \*

> "A novation is never presumed; the party asserting it must establish clearly and satisfactorily that there was an intention, concurred in by all the parties, that the existing obligation

be discharged by the new obligation. *Harford Bank of Bel Air v. Hopper's Estate*, 169 Md. 314, 330, 181 A. 751, 758 (1935); *District Nat'l. Bank of Washington v. Mordecai*, [133 Md. 419, 427, 105 A. 586 (1919)] . . . .

"The intention to substitute a new agreement for a previous contract need not be expressed however, since facts and circumstances surrounding the transaction, as well as the subsequent conduct by the parties, may show such an acceptance as clearly as an express agreement; but such facts and circumstances, when shown, must be such to establish that the intention to work a novation is clearly implied. *Leisner v. Finnerty, supra,* 252 Md. at 565, 250 A. 2d at 645 (1969), citing *Cole, Adm'x v. Wilbanks*, 226 Md. 34, 171 A. 2d 711 (1961) [(per curiam)]; *Swift v. Allan,* 211 Md. 588, 594, 128 A. 2d 260, 263 (1957); 2 S. Williston, *Contracts* § 353, at 816 (3d ed. 1959)."

While conceding that the first prerequisite to there being a novation is fulfilled by their contract with Brunswick and that the third requirement is satisfied by their contract with Test Concorde, the employees "deny . . . that there is any evidence to show that they intended to accept Test Concorde, Inc. as a new debtor in place of [Brunswick] or that they intended to discharge [Brunswick] from its obligations under the old contract of employment." Clearly there was no express intention, concurred in by all the parties, to discharge Brunswick's obligation and substitute Test Concorde's contract in its place; the question then is whether the evidence permits such an intent to be implied. More specifically, the issue is whether the facts and circumstances surrounding the petitioners' change of employers, and the ensuing conduct of the parties, provide legally sufficient evidence of an intention to enter into a novation. *Cf. Nat. Bk. of Washington v. Mordecai, supra,* 133 Md. at 428.

Looking at the evidence in the light most favorable to Brunswick, what it proved, in essence, was that the

petitioners toiled for one employer under one contract until the division in which they labored was sold, at which point they went to work for the new owner under an identical, or virtually identical, contract.[5] Although no Maryland case directly decides whether such facts are legally sufficient to establish a novation, we think the implication of our cases is that they fall short. While "[a] novation may occur by a change of parties to the contract, by the change of the subject-matter, [or] by the change of the terms and conditions," *Visitation Academy v. Schapiro, supra,* 169 Md. at 337 (*see additionally, BarGale Indus. v. Robert Realty, supra,* 275 Md. at 648; *Leisner v. Finnerty, supra,* 252 Md. at 563; and *Hudson v. Md. State Housing Co., supra,* 207 Md. at 326, all quoting *Visitation Academy*), we have held that neither an "extension of the time for the payment of an obligation," *Visitation Academy v. Schapiro, supra,* 169 Md. at 338, nor a "change of parties," *Levin v. Singer,* 227 Md. 47, 63, 175 A. 2d 423 (1961), is enough in itself to create a novation. In those cases in which we have concluded that the facts and circumstances surrounding the transaction were sufficient to support a finding that there was a novation, there has always been evidence establishing a clear and definite intent to enter into such a compact. *See, e.g., Leisner v. Finnerty, supra,* 252 Md. at 564-65; *Cole, Adm'x v. Wilbanks, supra; Swift v. Allan, supra,* 211 Md. at 593-95; *Harford Bank v. Hopper's Estate, supra,* 169 Md. at 330-31; *Nat. Bk. of Washington v. Mordecai, supra,* 133 Md. at 427-28. *See also General Electric Co. v. Lombardi,* 173 F. Supp. 841 (D. Md. 1959); *MacKenzie Laboratories, Inc. v. Lawrence,* 80 F. Supp. 710 (D. Md. 1948). The courts of other states, when presented with facts such as those present in this case, have reached

---

5. The reason we say that the two employment contracts were synonymous or nearly so is because Test told the Yacht Division's employees that it would hire them to perform the same jobs, at the same salaries, and with the same or better fringe benefits, yet what the added benefits were to be was not specified by Test and the record does not disclose whether any were in fact provided. However, it is clear that certain minor fringe benefits provided the employees by Brunswick were not continued by Test; we do not decide whether that constituted a breach of contract by Test.

divergent opinions as to whether they are legally sufficient to establish a novation. In *Mace v. Conde Nast Publications, Inc.*, 155 Conn. 680, 237 A. 2d 360, 361-62 (1967), former employees of Conde Nast's Vogue Pattern Service Department brought suit against Conde Nast for severance pay after the Butterick Company took over the Department under a licensing agreement. The plaintiffs knew nothing of the licensing agreement until after it was signed. The Vogue Pattern Service employees were told that if they left Conde Nast when their Department was taken over by Butterick, they would not receive severance pay regardless of whether or not they accepted jobs with Butterick. As stated by the Supreme Court of Connecticut, "[t]he plaintiffs went to work for Butterick because they were automatically transferred there by the defendant without being requested to transfer there and without either an oral or a written agreement by them to such a transfer." 237 A. 2d at 363. On the basis of those facts, the court held that whether there had been a novation was an issue of fact for the jury. 237 A. 2d at 363-64 (the jury found that there was no novation). However, the Supreme Judicial Court of Massachusetts, when faced with similar situations, has held otherwise. In *Clark, Ex'rx v. General Cleaning Co.*, 345 Mass. 62, 185 N.E.2d 749 (1962), Clark had a one-year written employment contract with General, which provided it could be assigned if the business was sold. The business was sold to Central Coat, Apron & Linen Service, Inc., to whom the contract was assigned; two weeks later the business was taken over by Coyne Industrial Laundry, Inc. Although his contract was not assigned to Coyne, Clark worked for Coyne for two weeks. Coyne wished to reduce Clark's salary and to otherwise alter his employment contract, which prompted him to leave Coyne; he was unsuccessful in obtaining similar work elsewhere. Clark died and his executrix sued General for breach of contract; General's defense was that there had been a novation. 185 N.E.2d at 749-50. Although recognizing that a novation may be implied from the circumstances surrounding the transaction and the conduct of the parties, the Massachusetts court concluded:

"Such an inference, however, would not have been warranted solely by the evidence that Clark, after the assignment, went to work for Central and received his agreed compensation from Central for two weeks and later received two weeks' pay from Coyne. Additional facts to be considered do not amount to more than the assignment itself and Clark's advance consent thereto, given in contemplation of the sale of General's business, but without knowledge of the identity of the purchaser. . . . [T]here was insufficient evidence to permit a finding that Clark agreed to accept Central's obligation upon the contract in lieu of that of General." 185 N.E.2d at 750 (citations omitted).

The Massachusetts court has expressed the same sentiment in other cases. *See, e.g., Mansfield v. Lang,* 293 Mass. 386, 200 N. E. 110, 113-14 (1936); *King v. American Powder Co.,* 290 Mass. 464, 195 N. E. 785, 787 (1935); *Larson v. Jeffrey-Nichols Motor Co.,* 279 Mass. 362, 181 N. E. 213, 214-15 (1932). *See also Vassardakis v. Parish,* 36 F. Supp. 1002 (S.D. N.Y. 1941); *Adams v. Jersey Central Power & Light Co., supra,* 120 A. 2d at 741; *Albert v. Parking Stations of New York, Inc.,* 235 App. Div. 682, 255 N.Y.S. 266 (per curiam), *aff'd mem.,* 260 N. Y. 532, 184 N. E. 80 (1932). We conclude that the Massachusetts cases are more in line with the decisions of this Court which require the intention to work a novation be clearly implied in order for such a compact to be inferred from the facts and circumstances accompanying a transaction. *See I. W. Berman Prop. v. Porter Bros., supra,* 276 Md. at 8; *Leisner v. Finnerty, supra,* 252 Md. at 565. Accordingly, we hold that what Brunswick proved with respect to the facts and circumstances surrounding the petitioners' change of employers was legally insufficient to establish a novation.

Brunswick, however, also relies on the subsequent conduct of the parties to prove circumstantially that a novation was intended. Specifically, it asserts that the failure of the petitioners, with one exception, to claim severance pay until

August of 1972, which was three or four months after Test Concorde ceased business and 22 months after they had left Brunswick, indicates that they intended to accept Test Concorde's obligation in place of Brunswick's.[6] We, however, are not satisfied that such an implication follows, especially since the statute of limitations, Maryland Code (1957, 1972 Repl. Vol.), Art. 57, § 1, *rewritten and recodified as* Code (1974), Courts and Judicial Proceedings Article, § 5-101, only bars contract suits after the passage of three years. In any event, we do not think the employees' procrastination, even when added to the other circumstances relied on by Brunswick, was legally sufficient to substantiate the existence of a novation.

As its next line of defense, Brunswick asserts that the employees' claim for severance pay is barred by waiver and equitable estoppel; we, like the trial judge, find neither to have been established. As we said in *BarGale Indus. v. Robert Realty, supra,* 275 Md. at 643-44:

> "A waiver is the intentional relinquishment of a known right, or such conduct as warrants an inference of the relinquishment of such right, and may result from an express agreement or be inferred from circumstances. '[A]cts relied upon as constituting a waiver of the provisions' of a contract must be inconsistent with an intention to insist upon enforcing such provisions. *Canaras v. Lift Truck Services, Inc.,* 272 Md. 337, 360, 322 A. 2d 866, 877 (1974); *Food Fair Stores, Inc. v. Blumberg,* 234 Md. 521, 531, 200 A. 2d 166, 172 (1964)."

Brunswick contends that the employees' failure to demand severance pay within a reasonable time of their termination by Brunswick manifested an intent to waive any right to such pay. We, however, do not think the employees' procrastination can be said to be inconsistent with an

---

**6.** The one exception is a petitioner who made a claim against Brunswick on April 21, 1972, which was less than a week before Test Concorde closed shop and over 18 months after he had left Brunswick.

intention to enforce their contractual right to severance pay. As stated by the trial judge:

"In this case there has been no evidence offered or testimony produced to show that the [petitioners] in any way voluntarily surrendered their right to maintain this cause of action. There is no question that the action was filed within the limitations period. A lapse of time coupled with no further evidence does not constitute a waiver."

As for equitable estoppel, the definition which we have repeatedly approved and applied, see *Savonis v. Burke*, 241 Md. 316, 319, 216 A. 2d 521 (1966) and cases cited therein, is that contained in 3 *J. Pomeroy, Equity Jurisprudence* § 804, at 189 (5th ed. 1941):

"Equitable estoppel is the effect of the voluntary conduct of a party whereby he is absolutely precluded, both at law and in equity, from asserting rights which might perhaps have otherwise existed, either of property, of contract, or of remedy, as against another person, who has in good faith relied upon such conduct, and has been led thereby to change his position for the worse, and who on his part acquires some corresponding right, either of property, of contract, or of remedy."

As we said in *Savonis v. Burke, supra*, 241 Md. at 319:

"It is essential for the application of the doctrine of equitable estoppel that the party claiming the benefit of the estoppel must have been misled to his injury and changed his position for the worse, having believed and relied on the representations of the party sought to be estopped."

Brunswick's contention with respect to this defense, as we understand it, is that — since (1) Brunswick, under its contract with Test, was entitled to reimbursement from Test for any money it had to pay out as severance pay to the

employees of the Concorde Yacht Division; (2) the petitioners, with one exception, did not make any claim for severance pay until Test Concorde was in bankruptcy; (3) Brunswick relied on the petitioners' failure to make a claim to the extent of not demanding reimbursement while Test Concorde was solvent; and (4) Brunswick is now precluded by Test Concorde's bankruptcy from successfully obtaining repayment — the respondent was misled to its detriment by the petitioners' inaction and silence, and therefore these employees should be equitably estopped from seeking severance pay. The trial judge concluded, however, that Brunswick failed to establish either that it relied on the employees' procrastination or, since it was not precluded by Test Concorde's bankruptcy from seeking recompense from Test, that it suffered detriment. We will add that, as we have often said, silence will not raise an estoppel where there is no duty to speak or act, *see, e.g., id.* at 320; *Mohr v. Universal C. I. T. Corp.,* 216 Md. 197, 205-06, 140 A. 2d 49 (1958), and it does not appear that the employees had any such duty. Furthermore, we mention that Brunswick's knowledge of the facts and circumstances surrounding the transaction in question was at least equal to, if not greater than, that of the employees. *Cf. M. & C. C. v. Chesapeake,* 233 Md. 559, 581, 197 A. 2d 821 (1964). We conclude that neither waiver nor estoppel bar the petitioners' claim for severance pay.

As to the employees' claim for two weeks' pay in lieu of two weeks' prior notice of termination, the only difference between it and their demand for severance pay is that it is based on an unwritten general corporate practice whereas the severance pay claim is based on a written corporate policy. This raises the issue of whether, when employees have neither a written employment contract nor a collective bargaining agreement, an unwritten general practice of an employer constitutes, like a written company policy, an offer of a unilateral contract. In *Morschauser v. American News Co.,* 6 App. Div. 2d 1028, 178 N.Y.S.2d 279 (1958) (per curiam), former non-union employees of the defendant news company brought suit for severance pay when the

corporation discontinued the department in which they had worked. The court concluded:

> "If the defendant engaged in a practice of making severance payments to non-union employees on the termination of employment, and if such employees relied on this practice in accepting or continuing their employment, plaintiffs have a cause of action against the defendant." 178 N.Y.S.2d at 280.

We agree and hold that Brunswick's general practice of providing pay in lieu of notice of termination was, like its written policy directive as to severance pay, an offer of a unilateral contract which the employees accepted by continuing to work for Brunswick in reliance on it. *Cf.* Annot., 66 A.L.R.3d 1075 (1975).

Having determined that Brunswick's general practice with respect to pay in place of notice of separation became a contractual obligation, we must next ask if the employees are entitled to such pay under the provisions of the general practice. There were two prerequisites: (1) the employee had to be entitled to severance pay; and (2) the employee must have received less than two weeks' notice of termination. From what we have already said, it is clear that the petitioners satisfied the first requirement. Whether the second prerequisite was fulfilled depends on when the employees were first told that they were going to be terminated. Although this was the subject of dispute in the trial court, the issue was not resolved because the court concluded that there had been a novation. Since the resolution· of factual disputes is the province of the trial court, and not this Court, we must remand the case so that this determination may be made. If the trial court decides that a petitioner was not given two weeks' prior notice of termination, that employee will be entitled to the appropriate compensation. We add that what we have said with respect to waiver and equitable estoppel of the severance pay claims would be equally applicable to these claims, and need not be repeated.

The petitioners' final claim, made by only seven of their

number, is for vacation pay for time not used prior to the Yacht Division's sale to Test and is based on Brunswick's written corporate policy. For the same reasons the respondent's severance pay policy became a contractual obligation, Brunswick's provision for vacation pay also became contractual. Brunswick's Policies and Procedures Manual, Corporate Procedure 1.3329, VI C, provides that:

"Vacations must be taken during the vacation year. Unused vacation may not be carried over to another year, unless such arrangements are made in advance and at the option of the Corporation, as an exception to this Procedure. *Pay in lieu of time off will not be permitted under any circumstances.*" (Emphasis added.)

However, to this general prohibition, which would seem to bar the employees' claims, there appears to be an exception. Part V A, of this same corporate procedure adds that:

"An employee upon termination will be entitled to pay for unused vacation allowance during the calendar year *as specified in the following provisions:*
1. In order to qualify for pay for unused vacation, an employee *voluntarily terminating* must give notice as follows: [Schedule of length of prior notice required for each payroll classification omitted.]
2. [Omitted as not pertinent.]
3. [Omitted as not pertinent.]" (Emphasis added.)

Literally, part V A only offers pay for unused vacation time to certain voluntarily terminated employees, a category into which the petitioners clearly do not fall. We are, furthermore, unable to accept the employees' contention that the language of V A "implied that involuntarily terminated employees are entitled to receive cash in lieu of the unused vacation" since V A, an exception to the general ban of VI C, authorizes such payments only "as specified in the following provisions," none of which opens the door for

payments to involuntarily terminated employees. We, therefore, hold that the seven petitioners claiming vacation pay are not entitled to it under the terms of the contract.

In sum, and as noted earlier, we hold that the employees are entitled to a judgment in their favor for severance pay and, depending on the factual determination to be made by the trial court, possibly pay in lieu of notice, but not vacation pay.

> *Judgment reversed and case remanded to the Circuit Court for Baltimore County for further proceedings and for entry of judgment conforming to the views expressed in this opinion.*
> *Costs to be paid two-thirds by Brunswick and one-third by the petitioners.*