849 F.2d 604
 47 Empl. Prac. Dec. P 38,102
 Unpublished Disposition
NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Ronald A. BOSSALINA; Margaret Bukowski, Representative of
the Estate of Anthony Bukowski; Frank P. Lamka; Edward H.
Miller, Jr.; Richard W. Nebinger, Jr.; Louis W.
Workmeister, Sr.; Carolyn J. Bossalina; Margaret Bukowski;
Florence I. Lamka; Anne Marie Miller; Anna Marie
Workmeister; Richard W. Nebinger, Jr., Personal
Representative of the Estate of Frances Geraldine Nebinger,
Plaintiffs-Appellants,
v.
LEVER BROTHERS, INC., Defendant-Appellee.
 No. 86-2158.
 United States Court of Appeals, Fourth Circuit.
 Argued: Jan. 6, 1988.
Decided: May 31, 1988.
 
 Emily Miller Rody (Rody & Associates, on brief), for appellants.
 Frank C. Morris, Jr. (Ronald M. Green; Kathleen J. Taylor; Epstein, Becker, Green, P.C., on brief), for appellee.
 Before SPROUSE and WILKINS, Circuit Judges, and JOSEPH H. YOUNG, Senior United States District Judge for the District of Maryland, sitting by designation.
 PER CURIAM:
 
 
 1
 Lever Brothers Company hired a new manager to improve the performance record at its Baltimore plant. The new manager discarded the old personnel policy of promoting unskilled persons to supervisory positions in favor of a policy of hiring technically trained, college-educated supervisors. After several new supervisors had been recruited under the new personnel policy, the company began overall staff reductions and some of the current supervisors were terminated. The persons terminated were, in general, older than the ones hired, thus giving rise to this age discrimination suit.
 
 
 2
 Plaintiffs[1] appeal the district court's grant of summary judgment for defendant Lever Brothers as to five of the former employees, for failure to state a prima facie case of age discrimination. Plaintiff Bukowski appeals summary judgment for failure to mitigate his damages. Plaintiffs also appeal from the dismissal of their state law claims for breach of contract, intentional infliction of emotional distress and abusive discharge.[2]
 
 I.
 
 3
 Plaintiffs' claims were rejected on summary judgment, so the standard of review is the same as that governing the district court's action: whether plaintiffs' claims presented genuine issues of material, disputed facts viewed in the light most favorable to plaintiffs. See Ballinger v. North Carolina Agricultural Extension Service, 815 F.2d 1001, 1004 (4th Cir.1987), cert. denied, 108 S.Ct. 232 (1987). Although summary judgment is to be used carefully, "[t]he fact that motive is often the critical issue in employment discrimination cases does not mean that summary judgment is never an appropriate vehicle for resolution." Ballinger at 1005 quoting International Woodworkers of America v. Chesapeake Bay Plywood Corp., 659 F.2d 1259, 1272 (4th Cir.1981) (emphasis in original). Thus, for a claim to survive a motion for summary judgment, there must be more than "the mere existence of some alleged factual dispute between the parties." Ballinger, supra, quoting Anderson v. Liberty Lobby, Inc., 106 S.Ct. 2505, 2510 (1986) (emphasis in original).
 
 
 4
 Summary judgment is appropriate when there is "no genuine issue of material fact." Anderson, supra (emphasis in original).
 
 
 5
 As to materiality, the substantive law will identify which facts are material.... [W]hile the materiality determination rests on the substantive law, it is the substantive law's identification of which facts are critical and which facts are irrelevant that governs.... [M]ateriality is only a criterion for categorizing factual disputes in their relation to the legal elements of the claim and not a criterion for evaluating the evidentiary underpinings of those disputes.
 
 
 6
 Id. Thus, looking not to the method of proof but rather to the elements of the claim, we affirm.
 
 
 7
 An age discrimination plaintiff must first demonstrate that the prima facie elements of discriminatory termination are present:
 
 
 8
 (1) the plaintiff is in the protected group; (2) the plaintiff was discharged or demoted; (3) at the time of discharge or demotion, the plaintiff was performing his job at a level that met his employer's legitimate expectations; and (4) following his discharge or demotion, the plaintiff was replaced by someone of comparable qualifications outside the protected class.
 
 
 9
 EEOC v. Western Electric Co., Inc., 713 F.2d 1011, 1014 (4th Cir.1983).[3] Plaintiffs failed to demonstrate a prima facie case even if their terminations are viewed as simple dismissals rather than as part of a reduction-in-force.
 
 
 10
 Appellants claim that "[s]hortly before plaintiffs were terminated in September and October, 1980, Lever hired 5 young first line supervisors" for supervisory positions similar to those held by appellants, and that "[s]ubsequent to plaintiffs' terminations, Lever advertised openings for supervisory positions...." But appellants do not dispute Lever's need to upgrade the skill level of its supervisors, nor is it the role of the courts to second-guess the propriety of such managerial decisions. Burdine, supra, 450 U.S. at 259 (courts' adjudication of discrimination claims was not intended to diminish "traditional management prerogatives"). Nor do appellants deny that they lacked the objective qualifications of college-level technical training sufficient to ensure that Lever's capital investment and new managerial program would effect the much needed improvement in the plant's production efficiency.
 
 
 11
 Simply stated, appellants' employer raised the qualifying technical skill level above that possessed by appellants. "The desire to establish a new management philosophy by assembling a new management team that displaces older employees does not ipso facto constitue [sic] ADEA discrimination." Dale v. Chicago Tribune Co., 797 F.2d 458, 465 n. 11 (7th Cir.1986), cert. denied, 107 S.Ct. 954 (1987). That the employer set new, higher standards raises no suspicion of discrimination by itself; the courts must accept the employer's legitimate standards of qualification "provided the decision is not based upon unlawful criteria." Burdine, supra, 450 U.S. at 259. Lever chose education-based skill criteria for reforming its supervisory staff. It is just such objective credentials which the discrimination laws have fostered as "safe-harbor" criteria for employers' decisions. See, e.g., Watson v. National Linen Service, 686 F.2d 877, 881 (11th Cir.1982) ("failure to establish 'fixed or reasonably objective standards and procedures for hiring' is a discriminatory practice") quoting Brown v. Gaston County Dyeing Machine Co., 457 F.2d 1377, 1382 (4th Cir.), cert. denied, 409 U.S. 982 (1972).
 
 II.
 
 12
 The district court granted summary judgment against plaintiff Bukowski for his total failure to seek alternative employment following his termination by Lever. Thus, the court did not reach the merits of his ADEA claim because "Bukowski's failure to mitigate clearly stands as a separate and independent bar to his recovery." Appellants do not dispute that Bukowski made no effort to find another job after he was terminated, rather they argue that failure to mitigate damages is not a total bar to recovery
 
 
 13
 The essence of the mitigation defense is that "all or a part of the plaintiff's damage should reasonably have been avoided by the plaintiff...." 22 Am.Jur.2d Damages Sec. 200 (1965). The district court properly granted summary judgment against plaintiff Bukowski by holding that his admitted failure to mitigate was legally sufficient to bar any recovery for the alleged age discrimination. See Brady v. Thurston Motor Lines, 753 F.2d 1269, 1278 (4th Cir.1985).
 
 III.
 A. State Law Contract Claims
 
 14
 Appellants allege that Lever violated contractual obligations based upon a written collective bargaining agreement "further supplemented by other written and oral commitments to each Plaintiff, and by customs and practices ... in which the Defendant consistently engaged throughout the Plaintiff's employment...." Amended Complaint p 43. However, as the district court noted and the appellants now admit, the claims rest only upon alleged oral statements and employer practices rather than upon the collective bargaining agreement itself which did not cover supervisors. Specifically, plaintiffs alleged that customs and practices constituted a unilateral agreement by the employer to guarantee supervisors' seniority rights during a reduction-in-force. The district court found that plaintiffs, after years of discovery, were unable to identify any "clearly defined directives" sufficient to create proof of the definite terms of an employment contract. We agree.
 
 
 15
 Maryland law continues to recognize that in the absence of an expressed contract, employment arrangements of indefinite duration may be terminated at will by either party. Adler v. American Standard Corp., 291 Md. 31, 35 (1981). Appellants rely on two other Maryland decisions which identified limited exceptions to the "at will" presumption. In Dahl v. Brunswick Corp., 277 Md. 471, 476 (1976), the court recognized that despite the lack of a written employment contract, an employer's written policy statements regarding the terms of employment may ripen into contractual obligations. Thus, where the "employees were included within the scope of written policy statements issued by Brunswick to govern ... severance and vacation pay," id. at 474, the court held that an unwritten "general practice of providing pay in lieu of notice of termination was, like its written policy directive as to severance pay, an offer of a unilateral contract which the employees accepted by continuing to work for Brunswick in reliance on it." Id. at 489. However, the Maryland courts have never held, as appellants argue, that such general practices and oral statements could constitute contractual obligations in the absence of any written policy statement or other written evidence such as an employee handbook.
 
 B. Other State Law Claims
 
 16
 Appellants also appeal two other state law claims dismissed by the district court. First, plaintiffs alleged that Lever's actions violated Maryland's public policy against terminations based upon age discrimination and valid complaints concerning unsafe working conditions. The district court concluded that because there exist statutory remedies for both situations, an action for wrongful discharge under Adler v. American Standard Corp., supra, would be precluded. We agree.
 
 
 17
 The other state law claim raised by appellants is for intentional infliction of emotional distress allegedly caused by the circumstances of their termination, viz., that Lever gave no notice prior to termination and that each fifteen minute exit interview was followed by an order that the terminated employee not return to the plant.
 
 
 18
 We agree with the district court that mere fact of dismissal and an order not to return cannot alone give rise to legal liability for the resulting personal distress suffered by the terminated former employee. No reasonable trier of fact could find that this method of informing plaintiffs that they were terminated constituted conduct beyond the bounds of decency in a civilized community. Employees are fired every day, some after brief employment and some after years of service. The fact that plaintiffs in this case were employed for 19 to 40 years and learned without prior notice that they had lost their jobs perhaps indicates callousness or insensitivity, and the embarrassment suffered by plaintiffs and their families probably was very real, but this does not make it compensable. It simply cannot be "extreme or outrageous" conduct to calmly explain to someone that they have just been fired. Civilized society has survived such activity to date, and the rigors of competitive labor markets suggest that it will continue.
 
 
 19
 AFFIRMED.
 
 
 
 [1]
 Six former employees and their wives were plaintiffs in this action. Three of these former employees are now deceased and represented on behalf of their estates. For convenience, each claim at issue will be identified with the employee whose termination gave rise to the claim
 
 
 [2]
 The emotional distress and abusive discharge claims were dismissed in an oral opinion rendered by Judge Black on August 24, 1984. After reassignment of the case, Judge Motz granted summary judgment for defendant on all other claims in a written opinion dated June 11, 1986
 
 
 [3]
 These elements are adapted from the Supreme Court's description of a plaintiff's prima facie case of racially discriminatory hiring:
 (i) that he belongs to a racial minority; (ii) that he applied and was qualified for a job for which the employer was seeking applicants; (iii) that, despite his qualifications, he was rejected; and (iv) that, after his rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications.
 McDonnell-Douglas Corp., supra, 411 U.S. at 802.